### J. T. WARD v. THE STATE.

#### No. 1053. Decided March 22, 1911.

**Carrying Pistol—Evidence—Traveler.**

Where defendant claimed that he went from San Antonio to Waco and there registered at a hotel, and that the next day on his way to his regular boarding house his pistol accidentally dropped out of his pocket while he was invited into a friend's house; and the State showed by the hotel keeper that the defendant had not registered, it was reversible error not to permit the defendant to show that since hearing the State's witness testify as to his not registering at the hotel, he remembered that he told a friend to register for him who had probably not done so; it appearing from the evidence that the defendant had spent a night at said hotel and believed that he had registered. This was material to show that defendant had not fabricated his testimony that he stopped at the hotel.

Appeal from the County Court of McLennan. Tried below before the Hon. Tom. L. McCullough.

Appeal from a conviction of unlawfully carrying a pistol; penalty, a fine of $100.

The opinion states the case.

No brief on file for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of unlawfully carrying on and about his person a pistol.

Mrs. Morgan and Miss Quinn testified that appellant took dinner at Mrs. Morgan's on the 30th or 31st of March, and while sitting at the table a pistol dropped out of his pocket on the floor. This was in the city of Waco. Appellant testified that he went from San Antonio to Waco on the train, reaching Waco about 4 o'clock in the evening; that he and a friend who accompanied him took a cab and drove to the Exchange Hotel; that they took a room and went directly to the room. His friend's name was J. S. Jones. That when he went to the room he left his grip and pistol in the room, went down town and stayed around a while until about 10 o'clock at night; that he returned and spent the night at the hotel and remained there until 8 o'clock the next morning. After breakfast he went to Baker & Baker's law office to see them about a divorce case in which he had them employed; that he remained at their office until about 11 o'clock, thence he went to the hotel and got his sixshooter and started from the Exchange Hotel, leaving his grip there, and was going to Mrs. Smith's, at 1525 Webster Street, to spend the remainder of his time in Waco, and this he did for about three weeks. That en route he met J. P. Morgan about Third and Franklin Streets, and walked with him as far as his place, which he says was on a direct line to where he was going to Mrs. Smith's, on Webster Street. That Morgan extended him an invitation to dine, which he accepted, and while at the dinner table his sixshooter dropped out of his pocket on the floor. That after talking a short while after dinner, he went to Mrs. Smith's place. He further testified that the hammer of the pistol was bent and would not strike the cartridge; that he had traded for the pistol the evening before he left San Antonio. On cross-examination he says he registered at the Exchange Hotel and took the same room with his friend Jones. He says he did not remember whether he himself registered or whether Jones registered for both, but he knew he was registered and that he stayed all night at the Exchange Hotel and paid for his room the next day. That he did not take his grip with him the next day when he left the hotel, but got his pistol out of the grip and carried it; that later on same day he carried the grip to Mrs. Smith's.

Adams testified that he was the proprietor of the Exchange Hotel, situated on the corner of Third and Franklin Streets, in the city of Waco. This witness had his hotel register showing the names of the people who stopped at his hotel. He gave a description as to how

the dates and names were kept every day, and the manner of keeping his register, and testified that he did not paste the dates and did not see them placed on the register, but knew the custom of the clerk to place these dates on the register every morning. Sometimes he did not paste the dates in, but just wrote them on the register. This witness did not see him place the dates, but knew the dates were correct, inasmuch as he was at the hotel every day and knew the proper dates are always placed in the register. He then testified that J. T. Ward, appellant's name, did not appear upon the register. The name of J. S. Jones did appear there on the 30th day of March. This register shows the name of every person who took a room at the hotel from the 9th of February, 1910, to the 6th of April, 1910. This is the substance of his testimony.

Appellant reserved a bill of exceptions which shows that he offered to prove, in explanation of his former testimony, and also in explanation of the testimony of Adams, that when he went to the Exchange Hotel he was accompanied by Jones, whom he requested to register for him, his memory having been refreshed by the hotel register, and by thinking over the matter, after having previously testified that he registered there, that when he stated that he registered at the hotel he did not mean that he himself wrote his own name, but that he requested his friend Jones, who was registered there on the 30th day of March, from San Antonio, to register for him, and believed Jones had complied with his request. This testimony, it is suggested, was admissible in rebuttal of the testimony of Adams and in explanation of defendant's own previous testimony, and it was prejudicial to his case to be prohibited from explaining the matter which involved his veracity as a witness and was an attack on his defense. We are of opinion that this testimony ought to have been permitted to go to the jury. Appellant had testified substantially that his name had been placed on the register, that is, from the circumstance he had stated to the jury in his original evidence and conveyed the idea that he had registered at the hotel. Adams was placed on the stand with the register, which showed his name did not appear on the book, but that Jones' name did appear. In explanation of his own testimony and to meet the testimony of Adams, we are of opinion appellant ought to have been permitted to show that he had instructed or requested Jones to write his name on the register, and that he believed it had been done, inasmuch as he had spent the night at the hotel and paid his bill. Wherever a damaging or a material fact has been introduced against a party, he ought to be permitted to explain or meet that fact so as to remove, if possible, any ill effect of such damaging or material testimony. This testimony, from a review of the record, it seems to us, was of a material character, inasmuch as the judge charged the jury in regard to his being a traveler; and further, that if he diverted his course as such traveler and loitered by the wayside, stopping at places, he would be guilty. Appellant's theory of the

matter is that he stopped at the hotel for the night, and was going from the hotel down to a permanent boarding-house, and only stopped for dinner with a friend at the time he was seen with the pistol. Under Adams' testimony appellant did not stop at the hotel, or at least the jury could draw the inference or conclusion that he did not stop at the hotel, and that this part of appellant's testimony was a fabrication and false. If appellant had not stopped over night at the hotel, as he claimed, then his whereabouts from the time he reached Waco on the evening and during the night before he was seen with the pistol is unaccounted for. He is not shown to have had any place to stop during the night in Waco. So, viewed in the light of this record, we are of opinion this testimony was of a material character, and it should have been permitted to go to the jury. If appellant had stopped at the hotel, as he claimed, whether he registered or not, in going the nearest practicable route from the hotel to his permanent boarding place, we are of opinion he would have a right to carry the pistol to such boarding place; and if he was going from the hotel to Mrs. Smith's place on a direct line, as he testified, and en route stopped only to dine with his friend, we hardly think this is such a diversion from his line of travel that would amount to a violation of the law. This would not come within the rule laid down in the case of Stilly v. State, 27 Texas Crim. App., 445, and line of authorities which follow that case. It may be stated in this connection that one of the Smiths testified that appellant did spend three weeks at their house following the day when he was seen with the pistol. Under the circumstances presented in this record, we are of opinion that the judgment ought to be reversed and the cause remanded for another trial, and it is so ordered.

*Reversed and remanded.*