Phillip SMITH, Appellant,

v.

The STATE of Texas, Appellee.

No. 62151.

Court of Criminal Appeals of Texas.

April 14, 1982.

Izak D. Gregory, Dallas, for appellant.

Henry Wade, Dist. Atty. and Stanley E. Keeton, Asst. Dist. Atty., Dallas, Robert Huttash, State's Atty., Austin, for the State.

Before DALLY, W. C. DAVIS and TEAGUE, JJ.

## OPINION

TEAGUE, Judge.

Appellant was tried and convicted after a bench trial for unlawfully carrying a handgun.[1] Punishment was assessed at 30 days' confinement in the Dallas County jail and a $100 fine, plus court costs, with the 30 days' confinement probated for a period of 12 months.

Appellant appeals his conviction, contending specifically that he was a "traveler," see V.T.C.A. Penal Code, Sec. 46.03, which provides:

> The provisions of Section 46.02 of this code do not apply to a person:
>
> \* \* \* \* \* \*
>
> (3) traveling;
>
> \* \* \* \* \* \*

We affirm.

The facts of this cause show the following:

Appellant, who lived with his parents in their residence in Waxahachie, drove one day to Chambers Creek, located between Waxahachie and Italy, to fish, taking with him both fishing equipment and a .22 caliber pistol. He carried the pistol to protect himself from the snake infested Chambers

---

1. See V.T.C.A. Penal Code, Sec. 46.02, which provides:

 (a) A person commits an offense if he intentionally, knowingly, or recklessly carries on or about his person a handgun, illegal knife, or club.

 \* \* \* \* \* \*

Creek area. Appellant, however, was unsuccessful in catching any fish, nor was it necessary for him to shoot any snakes. While fishing, he realized that he was soon due to be at his place of employment, Neuhoff's in Dallas. He then packed up his gear and drove immediately and directly to his place of employment. He worked his shift at Neuhoff's and then left his place of employment, intending to then go immediately to his unidentified girlfriend's residence. Because he ran a red light, on the street where his girlfriend lived, he attracted the attention of two Dallas police officers, Orler and Sanchez, who caused appellant to stop his vehicle. When Orler shined his flashlight into the appellant's motor vehicle, Orler saw "what appear[ed] to be a pistol laying there, protruding from beneath the seat." Further investigation revealed that the item he saw was a .22 caliber pistol, for which possession the appellant was thereafter charged. Orler testified that it was possible the appellant told him and Sanchez that he was coming from work and had previously been fishing.

Appellant's girlfriend did not testify, but appellant's father did; corroborating some of appellant's testimony. Because the appellant was not asked, and his girlfriend did not testify, we do not know what her reaction was when the appellant did not arrive at her residence early that morning. However, the evidence adduced does not show that appellant's girlfriend was expecting appellant to arrive at her residence after he left his place of employment.

The trial court rejected the appellant's defense that he was a "traveler" at the time when he was stopped by Orler and Sanchez. Nevertheless, in its findings of fact, the trial court did find that when enroute to his place of employment from Chambers Creek the appellant was a "traveler," at least to the "cut-off point" where appellant's parents resided. However, the trial court rejected the fact that the appellant was thereafter a "traveler."

 We first dispose of the appellant's contention that he had a temporary residence where his girlfriend resided. Cf. *Campbell v. State*, 28 Tex.App. 44, 11 S.W. 832 (1889); *Ward v. State*, 61 Tex.Cr.R. 604, 136 S.W. 48 (1911). Although we agree with the appellant that a person may have both a permanent legal residence and a temporary legal residence, we nevertheless conclude from the evidence adduced in this cause that the appellant intended only to dally at his girlfriend's residence. *Colson v. State*, 52 Tex.Cr.R. 138, 105 S.W. 507 (1907). We demonstrate our conclusion that the appellant did not have a temporary legal residence at his girlfriend's residence by setting out the following excerpts from the record on appeal, with all of the answers by the appellant, and with emphasis supplied by the author of this opinion:

\* \* \* \* \* \*

Q: After you left the creek, do you have to drive back by *your house* to get to work?

A: No, sir.

\* \* \* \* \* \*

Q: But you didn't have time *to go home* before you went to work that afternoon.

A: No.

Q: Okay, where did you live?

A: *I'm living* in Waxahachie.

Q: On that date where did you live?

A: *I lived in Waxahachie with my parents,* but I *stayed* up here [in Dallas], you know, *off and on*, with my girlfriend.

Q: Well, on that date where did you live?

A: Where did I live?

Q: Yes, sir, what was your—*where did you intend to have your home?*

A: Well, *I was going to spend the evening* with my girlfriend, so I guess over there.

Q: What evening?

A: What evening?

Q: Yes, sir.

A: *After I got off of work that night, that's where I was going.*

Q: And what was her address?

A: All I know is Crutcher.

Q: Pardon?

A: Crutcher, on Crutcher.

Q: You don't have it, *you don't have any way of knowing what the address is?*

A: *No, sir.*

\* \* \* \* \* \*

Q: And why didn't you go by *your house?*

A: Because I would have been late for work if I had went by there.

Q: So after you put up your fishing gear, you just had time to go straight to work and not go by *your house?*

A: Yes, sir.

Q: If you had went by *your house,* it would have been out of the way and you would have been late and it would have been out of your way?

A: Yes, sir.

Furthermore, there is *no* evidence to reflect any of the following:

(1) Amount of time appellant had previously spent at his girlfriend's residence;

(2) That appellant kept any of his clothing at the residence;

(3) That appellant paid part or all of the rent for the residence;

(4) That appellant kept any of his personal belongings at the residence;

(5) That appellant ever consumed food at the residence;

(6) That appellant used facilities of the residence, such as the bedroom;

(7) That appellant ever received bills, bank statements, or the like at the residence.

In *Nolte v. Saenz,* 153 S.W.2d 281 (Tex. Civ.App.—San Antonio, 1941), former Justice Norvell of that Court on motion for rehearing addressed the issue of a temporary residence in a plea of privilege case, and expressed in the following language, inter alia, why we rule against the appellant's contention: "Even though a temporary residence of a certain nature may meet the statutory requisites, it can not be said that all residences which may be thus described come within the statutory provisions." (*Id.* at 283).

Whatever else appellant's relationship might have been to his girlfriend's residence, we hold that for purposes of V.T. C.A. Penal Code, Sec. 46.03, it was not a temporary legal residence of the appellant.

We next address appellant's contention that he was a "traveler" within the meaning of V.T.C.A. Penal Code, Sec. 46.03, when he was stopped and thereafter arrested by officers Orler and Sanchez.

The "traveler" exception in the statute has been described as "one of the most enigmatic provisions of the prior weapons offense." See the "Practice Commentary" to Sec. 46.03, *Id.* We agree with this statement, but find that based upon the facts adduced in this cause the appellant was not a "traveler" at the time he was stopped by officers Orler and Sanchez. " . . . when the condition that sanctions the carrying of a deadly weapon ceases, the right ceases." *Trimble v. State,* 132 Tex.Cr.R. 236, 104 S.W.2d 31, 34 (1937).

We find, without the necessity of deciding just exactly when the appellant ceased being a "traveler," that at a minimum, when appellant was stopped by Orler and Sanchez, it was then a question of fact for the trier of fact to decide whether or not appellant was a "traveler" within the meaning of the statute.

In so holding, we approve the remarks that Judge Lattimore of this Court made over 50 years ago in *George v. State,* 90 Tex.Cr.R. 179, 234 S.W. 87, 88–89 (1921):

\* \* \* \* \* \*

Was appellant a traveler? The trial court concluded that he was not. This question is one of fact for the trial court or jury, as the case may be. *Impson v. State,* [Cr.App.] 19 S.W. 677; *Shelton v. State,* 27 Tex.App. 443, 11 S.W. 457, 11 Am.St.Rep. 200; *Williams v. State,* 74 Tex.Cr.R. 639, 169 S.W. 1154; *Witt v. State,* [89 Tex.Cr.R. 368] 231 S.W. 395.

We are aware that the decisions of this state are in a condition of hopeless confusion as to when a man is or is not a traveler; the earlier cases tending in the direction of greater, and those of later years of less, latitude of construction. We have examined all the authorities cited by appellant and many others, and have found no case holding in substance that a man who goes a distance which can be covered in two hours, in the broad daylight, along a road where he was probably never out of sight of a number of houses, is held to be a traveler. We have found no case where a man is held a traveler whose absence was for less than a day. Many of the earlier decisions are based on journeys comparatively short in distance, but necessarily consuming some time by reason of the less expeditious modes of travel. Some cases hold that going from one county to another would make one a traveler, but later cases demonstrate the fallacy of such holding. Still other cases appear in which this court, as a matter of law, attempts to say when one is and when one is not a traveler, and it is earnestly urged by Judge Henderson in the *Bain* Case, 38 Tex.Cr.R. 635, 44 S.W. 518, that the Legislature should make a statutory definition of the term under discussion.

In the instant case appellant claimed that when he left home in the morning he intended going to Austin and there getting some woman and going to San Antonio, returning the next day. The distance he intended to go is not stated in the record. Appellant's friend, whose statement appears in the record as having seen him in Austin and gone with him to various places in search of two women, says nothing about any intent or plan to go to San Antonio. Appellant's mother told the officer who went to the house looking for him that he told her he would be home at 5 or 6 o'clock that evening. From the statement of facts it appears that Austin and Taylor are about 40 miles apart, and that it took about two hours each way to make the trip. The trial court held appellant not a traveler under the facts, and we are unwilling to hold that this conclusion was without support, and that one who only went a two hours' drive was a traveler. We do not believe one going with a crowd on an excursion and coming back the same day, though going a greater distance than did appellant, could buckle on a pistol and hide himself from prosecution by claiming he was a traveler as a matter of law. 'Tempora mutantur et nos mutamur.' A man going in an ox wagon 20 miles and having to camp out at night may have been held a traveler in times past, but it would certainly license pistol carrying with all its train of evils to hold in these days of swiftly moving automobiles which throng every road and carry their passengers the distance last mentioned, if desired, in a half hour, that persons are to be held travelers as a matter of law, on authority of such precedents. We do not believe that appellant has discharged the burden fixed on him by all of our courts of showing himself to be a traveler, and, so believing, the judgment will be affirmed.

We find that when the appellant left his place of employment and was arrested enroute to his girlfriend's residence, at which residence we infer from the record that he intended only to remain for a relatively short period of time before continuing on to his permanent residence, the condition that previously sanctioned him carrying the pistol had ceased to exist. At that point in time he was guilty of unlawfully carrying a handgun.[2] E.g., *Evers v. State*, 576 S.W.2d 46 (Tex.Cr.App.1979); *Johnson v. State*, 571 S.W.2d 170 (Tex.Cr.App.1978); *Inzer v. State*, 601 S.W.2d 367 (Tex.Cr.App.1980).

2. We find that the following words of the trial judge are most appropriate as to what course of action the appellant should have taken when he left Chambers Creek. "... if he didn't want to go home, he should have at least put it [the pistol] in the trunk of his car and locked it up ..."

We find that the evidence is sufficient to sustain the verdict of the trial court. See *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

The judgment of conviction is affirmed.

DALLY and W. C. DAVIS, JJ., concur in the result.