## PETE ANGLEY V. THE STATE.

### *No. 874.   Decided February 12th, 1896.*

**1.   Bills of Exception—Certified by Bystanders—Practice.**

Where the court refuses to permit a defendant to prepare his bills of exception or refuses to sign his bills, he should appeal to bystanders; or, afterwards, if the court (time having been allowed), refuses to approve the bills or prepare them, the bills, prepared by defendant and certified by the bystanders, will be considered on appeal. Following, Exon v. State, 33 Tex. Crim. Rep., 461.

**2.   Assault With Intent to Rob—Evidence.**

On a trial for assault with intent to rob one Mrs. B., testimony by one Mrs. S., "That she intrusted her business with him (appellant), and that she would trust him to-day like he was one of her own sons," was irrelevant and inadmissible.

**3.   Same—Evidence—Identification of Defendant.**

On a trial for assault with intent to rob, the testimony of a witness to the effect, that on the day of the alleged assault, he saw two men corresponding in size to defendant and his codefendant, about six hundred yards from him, going in an easterly direction in a pasture near an old house, was admissible, in connection with other testimony, as a circumstance tending to show that the parties were in the vicinity of the alleged assault on that day.

**4.   Same—Evidence—Foot Tracks—End of Conspiracy.**

Where foot tracks were found at the place of the robbery made by two persons, one wearing a No. 9, and the other a No. 7 shoe, the latter making a peculiar mark or indentation, indicating that there was a hole in the sole of the shoe, and on the day after the assault, one R., defendant's codefendant; was found wearing a No. 7 shoe with a hole in the sole corresponding with the peculiarity of the track thus found: Held: Evidence of these facts was admissible against defendant, though R. was not jointly indicted with him; and, the fact, that the conspiracy between the parties may have ended, cuts no figure in the matter.

**5.   Same—Evidence as to the Money of the Assaulted Party.**

On a trial for assault with attempt to rob, evidence as to whether the assaulted party had or did not have money, is immaterial, unless defendant proposed to prove he knew she had no money. It is not necessary for the person to have money to be the subject of an assault with intent to rob.

**6.   Same.**

Where it was shown that one of the parties committing the crime had a red handkerchief, it was competent to prove that such a handkerchief was found in the pocket of the codefendant when he was arrested.

**7.   Bill of Exceptions—Sufficiency of.**

A bill of exceptions, taken to the admissibility of evidence, should clearly disclose the grounds of objection urged to the evidence, otherwise it will not be considered.

**8.   Jury—Receiving Other Evidence.**

Where the jury had already agreed upon a verdict assessing the lowest punishment, the fact that one of their number, made a statement to them of a damaging character to defendant, which they discussed, does not constitute reversible matter—no injury being shown.

**9. Correcting Charge After it was Read—New Trial—Practice.**

The fact that the court struck out a paragraph of the charge after it was read to the jury, must be availed of, if at all, by objection and bill of exception taken at the time; it cannot be presented, for the first time, by motion for a new trial.

**10. Prosecutrix as a Witness—Contradictory Statements.**

Where it is shown that the statements, made by the prosecutrix shortly after the occurrence, contradict her testimony, her credibility and the weight to be given to her testimony, is a question for the jury

APPEAL from the District Court of Hill. Tried below before Hon. J. M. HALL.

Appeal from a conviction for assault with intent to rob; penalty, two years' imprisonment in the penitentiary.

The indictment charged appellant with making an assault with intent to rob Louisa Butler, in Hill County, on the 21st day of December, 1894.

The offense was committed at the house of Mrs. Sharp, who lived two and one-half or three miles from the village of Derden. Defendant and Hess Rice, who was also prosecuted, by separate indictment, for this offense, were seen, by several witnesses, together at Derden, on the morning of the day that the offense was committed; and, by one or more witnesses between the village and Mrs. Sharp's residence.

Mrs. Louisa Butler testified: "I am going on 69 years of age. I knew the defendant, Pete Angley (and pointed him out to the court and jury). I live in Hill County, Texas, with Willie Warner, near Blum. On December 21st, 1894, I was at my sister's, Mrs. Sharp, who also lives near Blum. I was there on a visit on that day. About 2 o'clock in the afternoon, while I was at the house alone, and while my sister, Mrs. Sharp, had gone from the house to the well, some 300 or 400 yards away, to water the calves, two men, one a tall and the other a low man, came to the house, they came from the direction of the creek; they were bent over; the tall man had a white rag over his face, and the low man had a red handkerchief over his face with eye holes and a mouth hole in it. I knew the tall man; the tall man was Pete Angley, the defendant. The men came up on the gallery, where I was standing. Pete Angley ran into the cook-room and got a hammer out of the tool-box, then ran into the house, broke open two trunks, took the things out of the trunks, and scattered them over the floor. He then put the hammer down by the door. He, defendant, then came out on the gallery, and demanded of witness her money. He said: 'Give me your money.' He then said: 'Get me some money.' I told him I did not have a cent of money on earth, and I could not give him any. While Pete (defendant) went into the house, the other man stayed out where I was, on the gallery, and held a pistol on me all the time, working the trigger of his pistol and saying: 'I will shoot you; I will shoot you.' They then went off in the same direction from which they came, in a stooping position. Pete Angley had on a white shirt and a white rag over his face. The other man had on dark clothes and a red handkerchief over his face. This occurred in Hill County, Texas." A red handkerchief being shown witness, she

said it was the handkerchief that the low man had on, and, being shown a pistol, witness said: "It looked just like the one he had the day he and Angley assaulted me."

Jim Ince, testified: "I live northwest of Derden, about one and one-half miles from Mrs. Sharp's. I have known the defendant several years; have seen Hess Rice here in court, did not know him then. I was at home on December 21st, 1894. About half past 12 o'clock, I saw two men, one a tall man, the other a low man who had on dark colored clothes, tall one had on light clothes. They were about 250 or 300 yards from me in Rutledge's field. They were not in any road, but going in a northwest direction in Rutledge's field. Mrs. Sharp lived northwest from where I lived, about one and one-half miles. I heard of the robbery that night, and went to Mrs. Sharp's and saw Mrs. Butler that night."

Cross-examined. "I did not know who the men were. I would not undertake to say that defendant was one of the men that I saw that day; both men had on coats. Mrs. Butler stated to us that night, that the men had on false faces, and that she could not tell who they were."

Tom Chambers, witness for the State, testified: "I know the defendant and Hess Rice. I did not see them on December 21st, 1894, that I know of. I saw two men coming out of my pasture that morning about daylight. I did not notice to see whether they were of different sizes; did not know who they were. I live near Derden. I first heard of the robbery about half an hour by sun, that afternoon. I then went to John Kimblen's, and went from there to Mrs. Sharp's. It was dark when we got there. Charlie Sharp and another man was there when we got there; we went into the house and saw the trunks that were said to have been broken open; the iron clasps of both trunks were broken. We made inquiry for a description of the men; and got the description and then got on our horses and went to Derden, and from there went to W. J. Clary's. Pete Angley was there, and we arrested him the next morning. That night, others of our party went to H. N. Clary's, about one and one-half miles, and arrested Hess Rice (objected to because hearsay; objection overruled, defendant excepted). I went back to Mrs. Sharp's the next morning, and examined some tracks near the house, and, in the direction of a small creek near the house in the field, we followed the tracks about 400 yards. One was a small track, about No. 7, and one about No. 9. The tracks went in east direction from the house, not in the direction where defendant was arrested. There were a good many parties at Mrs. Sharp's that night. The smaller track showed that a hole was in the sole of the shoes. There was a similarity between the tracks we saw there and those that would have been made by the defendant and Hess Rice. Hess Rice had on a shoe that had a worn place or hole in the sole."

Cross-examined: "The number of the shoes that would have made the tracks we saw were about 7 and 9. This is very usual number of

shoes. I would not undertake to, nor do I say, that defendant or Rice made any of the tracks we saw. But the tracks are similar to those that would be made by the shoes defendant and Rice had on the time they were arrested. The tracks I saw near Mrs. Butler's appeared to be fresh." This witness is corroborated as to the trunks being broken open in the house, and as to the tracks found about the premises and leading from the house, and the peculiar hole found in the shoe upon defendant, Rice, the day after he was arrested, by several other witnesses, and amongst them by John Kimblen, who also testified, that on the morning after Rice was arrested, he, Kimblen, took from Rice's pocket a red cotton handkerchief, which had a large hole in it.

*Walker & Greenwood,* for appellant: The court erred in permitting the witness, Chambers, to testify over appellant's objections as to the condition and description of Hess Rice's shoes, worn by him the day after the offense. It was a material error to permit the County Attorney to prove the description of Rice's shoes the next day after the alleged offense, appellant not being present, and appellant and Rice were not seen together after the commission of the offense, and were arrested at separate places. After a conspiracy ceases, such evidence is wholly inadmissible.

The witness, Tom Chambers, was asked by the County Attorney what kind of shoes Rice had on the next day after the alleged offense. Appellant objected. (1) Because Rice was not jointly indicted with appellant. (2) Because if there had ever been a conspiracy between them it had come to a close prior to the next day. (3) Because there was no evidence to show that Rice had on the same shoes the day of the arrest worn by him the day of the alleged offense. These objections were overruled, and the witness answered that the next day Rice had on a shoe with a hole or worn place about the middle of the sole. 25 S. W. Rep., 426; 29 S. W. Rep., 1072; 21 S. W. Rep., 248; 13 Tex. Crim. App., 65; 14 Tex. Crim App., 582; 18 Tex. Crim. App., 92, 524; 19 Tex. Crim. App., 308; 8 Tex. Crim. App., 67; 9 Tex. Crim App., 377 and 363; 10 Tex. Crim. App., 199; 6 Tex. Crim. App., 1, 121; 13 Tex. Crim. App., 66.

Evidence that the witness, Kimblen, took from the pocket of Rice the next day after the offense, in defendant's absence, a red handkerchief with one large hole in it, was not admissible for any purpose over appellant's objections.

The witness Kimblen stated that when he took the handkerchief from Rice it had only one hole in it. Mrs. Butler stated that the red handkerchief worn by one of the assailants had two eye-holes and a mouth-hole in it. When Rice was arrested appellant was absent—the testimony showed that if there had ever been a conspiracy it had ceased long before the finding of the handkerchief. If any fruits of the crime, i. e., any stolen goods had been found in Rice's possession it might have been admissible evidence against appellant—the explanation of the court to the bill of exceptions, taken to the admission of the evidence on the

finding of the handkerchief—to the effect that the handkerchief was shown Mrs. Butler while on the stand does not, and cannot take away any force from the objections urged by appellant to the admission of this evidence. 24 Tex. Crim. App., 17, 251, 511; 8 Tex. Crim. App., 71, 84, 434.

The court erred in permitting the witness, Tom Chambers, over appellant's objections, to testify that the day of the alleged assault he saw two men in his pasture about daylight; that he did not observe their dress; did not know who they were, nor where they had been, nor where they were going. Witness had already stated that he did not see appellant and Rice on said day. Appellant objected to this testimony because it was too remote, too far removed from the main fact, to-wit: identity. These objections were overruled and appellant excepted.

Evidence of a circumstantial nature must prove or tend to prove some fact material to the case, and when too remote or irrelevant objections made should be sustained. Brewer v. State, 27 S. W. Rep., 139.

The court erred in refusing to permit appellant to prove by Mrs. Sharp, the owner of the premises, that Mrs. Butler brought no money or property to said house except the clothes she wore and her pipe, and that Mrs. Butler brought no money nor property to said place. This testimony was objected to by the County Attorney, on the ground of irrelevancy. The objection was sustained by the court, and appellant excepted.

It was an issue in this case, if there was an assault, was it made to take the property of Mrs. Butler or Mrs. Sharp, and other members of her family living in said house. Any evidence offered by appellant to show that Mrs. Butler had no money and no property at said place was competent to go to the jury to rebut the allegations in the indictment that defendant assaulted Mrs. Butler with intent to take the property of said Mrs. Butler.

It will be observed that the indictment in this case does not charge the appellant with an "assault to rob," in general terms, but it charges that the assault was made to rob Mrs. Butler of property belonging to said Mrs. Butler.

The record taken as a whole, shows that Mrs. Butler not only did not have any money or property at said house, but had none elsewhere. The proof shows that appellant had lived on the premises with Mrs. Sharp for many years, and was raised by her, and had left her premises only two months prior to the alleged offense. Mrs. Butler lived in another part of the neighborhood, and was being cared for by her nephew. Mrs. Sharp testified that she, her son and daughter, were the sole owners of the trunks and all other personal property in said house. But proof of the positive nature that Mrs. Butler did not have any money or property at said house, except her clothes and pipe, might have been of stronger probative force in the estimation of the jury. In view of the evidence of so conclusive a nature that appellant knew that Mrs. Butler was the owner of no money or property, it is rather strange that the judge wrote

the following indorsement on the bill of exception taken to the ruling of the court on said question: "Allowed with this explanation—that the defense in this case did not prove or offer to prove that either defendant or his companion, Rice, knew that Mrs. Butler had no money or property, hence whether she had or did not have any property or money in her possession was immaterial, which objection was sustained.    J. M. Hall, Judge, etc."

In addition to the foregoing testimony of Mrs. Sharp, she also testified that in talking with Mrs. Butler fifteen minutes after the assault she stated to Mrs. Sharp that the men did not call on her for money, but that they wanted that money in the house, and that they asked her if she didn't know where the money was.

After a charge in a felony case has been reduced to writing, signed, filed and read to the jury, it is a material error to erase or change any part of same without the consent of defendant.    If upon a material point it is doubtful whether even defendant's consent would render such action harmless.

It is a fundamental error in a felony case for the court to orally instruct the jury as to any issue or question.

After the court had prepared the charge, signed and read the same to the jury, said charge having been filed, while the clerk of the court was handing the said charge with the indictment to the jury, counsel for defendant presented a number of exceptions to the court, taken to said charge.    Whereupon the court, after reading said exceptions, recalled the charge from the jury, and then struck out paragraph 3 and other parts of the said charge; and after so doing, handed the charge back to the jury without re-reading said charge to the jury or any part thereof, and then stated orally to the jury that they need not consider paragraph 3.    The jury then retired with the charge as erased and amended.    Code of Crim. Proc., Art. 682; 11 Tex. Crim. App., 454; 25 S. W. Rep., 291; 4 Tex. Crim. App., 202; 12 Tex. Crim. App., 488; 15 Tex. Crim. App., 150.

The verdict of the jury is not supported by the law and the testimony in this:    The indictment charged appellant with an assault on Mrs. Butler, with the intent to rob her of her personal property.    The evidence clearly shows that if the defendant did make an assault, he knew that Mrs. Butler had nothing there, and that he knew the property belonged to Mrs. Sharp, then the assault (if any) was made with intent to take the property of Mrs. Sharp and not of Mrs. Butler, hence the variance between the allegations and the proof.

If the defendant did make the assault on Mrs. Butler, but with the intent to take the property of Mrs. Sharp, her son and daughter, and not with the intent to take any property of Mrs. Butler, then he cannot be legally convicted on the indictment in this cause.    The burden was on the State to prove conclusively that there existed in the mind of appellant, not only the specific intent to rob, but the specific intent to rob

Mrs. Butler of her property. State v. Lawler, (Mo.) 32 S. W. Rep., 979; Penal Code, Art. 729; 18 Tex. Crim. App., 426.

*Mann Trice*, Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—The appellant was tried under an indictment charging him with an assault with intent to rob, was convicted, and his punishment assessed at two years in the penitentiary, and from the judgment and sentence of the lower court he prosecutes this appeal. Counsel for appellant requests a writ of certiorari, for the purpose of bringing up two bills of exception from the lower court. The motion contains a certified copy of the bills. The court refused to approve the bills, stating, emphatically, that no such things occurred. It was the duty of the appellant to prepare his bills at the time, or request time in which to do so, and if the court refused to permit him to prepare the bills, or refused to sign his bills then he should have appealed to the bystanders; or if the court afterwards (time being allowed) refused to approve the bills or prepare them, the bills having been prepared by the defendant, and certified by the bystanders, we would consider such bills. See this subject fully discussed, and the procedure specifically pointed out, in the case of Exon v. State, 33 Tex. Crim. Rep., 461. The appellant has not brought himself within the rule laid down in that case, and therefore the writ of certiorari will not issue. Appellant proposed to prove by Mrs. Sharp "that she intrusted her business with him (appellant), and that she would trust him to-day, like he was one of her own boys." The state objected to this testimony, the objection was sustained, and the defendant reserved his exception. The alleged assault with intent to rob in this case was committed at the house of the said witness, Mrs. Sharp, during her temporary absence, and the assault is charged to have been committed upon one Mrs. Butler. If appellant had been charged with theft of Mrs. Sharp's property, this testimony, showing her course of dealing with appellant, might possibly have been admissible, as tending to show consent on her part to take goods by appellant; but the assault here alleged was on Mrs. Butler, with intent to take her property, and we fail to see how this testimony was admissible.

Appellant objected to the testimony of the State's witness, Tom Chambers, to the effect that, on the day of the alleged assault, he saw two men in a pasture, about 600 yards from him, near an old house, going in an easterly direction. One was a tall man, and the other a low man. That he did not recognize them. In connection with other testimony in the case, we think this testimony was admissible, as a circumstance tending to show that appellant and his codefendant, Hess Rice (one of whom was shown to be a tall man, and the other a low man), were in the vicinity of the alleged assault on that day. What we have said as to the above bill of exception is also applicable to the ninth bill of exception, urged against the admission of testimony of Jim Ince, of a similar character. Appellant also objected to certain State's witnesses testifying as to the character of shoes that Hess Rice had on when he

35th Crim. Rep.—28.

was brought to Mrs. Sharp's, the day after the assault. Appellant claims that this testimony should not be admitted, (1) because Rice was not indicted jointly with the defendant, and the defendant was alone on trial; (2) because, if any conspiracy had been established between Rice and the defendant, said conspiracy was at an end; (3) because there was no evidence that Rice had on the same shoes when he was arrested that he wore on the day of the alleged assault. In our opinion, it was immaterial whether Rice was indicted jointly with defendant or not, and the fact that the conspiracy may have been ended cuts no figure. The State showed by positive evidence that the defendant, with another person, committed the assault. The defendant was described as a tall man, and the other person as a low man. Several witnesses identified the defendant and Rice together, in the vicinity of the assault, on the evening when the same is charged to have been committed. The tracks of two persons in the near vicinity of the house where the assault was committed were found—one being a No. 9, and the other a No. 7, shoe; and the track on the ground made by the No. 7 shoe was shown to leave a peculiar mark, indicating that it had been made by a shoe with a hole or indentation in the sole of it. The defendant was shown to have worn a No. 9 shoe, and Rice a No. 7; and when Rice was arrested, and his shoes examined, the sole of one of them was found to have a worn place or indentation corresponding with the peculiarity in the track as found on the ground; and, in our opinion, the fact that Rice, when arrested, had on a No. 7 shoe with a worn place in it, was a circumstance tending to show that he was one of the parties present at the time the assault was committed, and as tending to corroborate the positive testimony of Mrs. Butler.

Appellant proposed to prove by Mrs. Sharp, a sister of the prosecutrix, that the prosecutrix brought no goods to her house, and that she had no goods or money at her house. On the objection of the State, this evidence was not admitted. This conviction is not for what was done by appellant in the house, but for the assault upon Mrs. Butler with intent to rob her, she being on the gallery. Whether she had any money in fact, or not, was immaterial, unless appellant proposed to carry the proof further, and show that he knew that she had no money. This was not done, nor proposed to be shown. It is well settled that it is not necessary for the person to have money in order to be the subject of an assault with intent to rob. The State introduced evidence that when Hess Rice was arrested there was found in his pocket a red handkerchief. The defendant saved his bill of exception to the introduction of this evidence. The proof on the part of the State showed that one of the parties, at the time of the robbery, had a red handkerchief, which party was described as the "low man." The testimony above objected to was admissible, on the same ground upon which the evidence regarding the shoes was admitted. The State proved, over the objection of the appellant, that the description given by Mrs. Butler of the men who assaulted her suited the description of the defendant and Hess Rice. The

appellant states no ground of objection.  This is not sufficient.  The bill of exception should be full, clear, and specific, setting forth distinctly every fact essential to an understanding of the matter sought to be presented thereby.  When taken to the admission of evidence, the bill should clearly disclose the ground or grounds of objection made to the evidence; otherwise it is not entitled to be considered.  See Wilson's Crim. Proc., § 2516, and authorities cited.  Appellant made a motion for a new trial, on the ground that the jury received additional testimony after their retirement.  In support of this, appellant presented the affidavit of Forsyth, a juror in the case.  Forsyth states that a fellow juror, Spencer, told the jury, or some of them, that the defendant knew that Mrs. Sharp had money, some $700 or $800; and that this fact was discussed before the jury.  Concede that this be true,—before it was mentioned, the jury had agreed upon a verdict of guilty, and the lowest punishment had been awarded.  Under this state of case there was no injury to appellant.  See Mason v. State (Tex. Crim. App.) 16 S. W., 766; Parker v. State (Tex. Crim. App.) 30 S. W., 553; Ray v. State, ante p., 354.

In the motion for a new trial, counsel for appellant complains of the action of the court in regard to the charge given.  The court, after having read the charge to the jury, upon objection of the appellant to the same, struck out paragraph 3, informing the jury at the time that they were not to consider that paragraph.  If this were true, counsel should have objected, and embodied the whole matter in a bill of exception.  This is not a matter which can be brought forward in the first instance in a motion for a new trial.  Again, we are not prepared to hold that the court could not change its charge after having read the same to the jury, when objected to by appellant.  We are of the opinion that the purpose of an objection is to give the court an opportunity to correct any error in its charge; and if this matter were embraced in a bill of exception, we would hold that the court did not err.  It is contended that the evidence is not sufficient to support the verdict of the jury.  Mrs. Butler swears positively that the appellant made the assault upon her.  The appellant proved by quite a number of witnesses that she stated, soon after the transaction, and afterwards repeatedly stated, that she did not recognize the appellant and Hes Rice, or either one of them, as the parties making the assault upon her.  This evidence was an attack upon her credibility.  The jury, however, believed her statement; and when we look to the circumstances in the case tending to corroborate her, we are not prepared to say that the verdict is without support in the evidence.  The judgment of the lower court is affirmed.

*Affirmed.*

[NOTE—Appellant filed a motion for rehearing, but withdrew it.— Reporter.]