## Hamp Williams v. The State.

### No. 2676.    Decided February 18, 1903.

**1.—Carrying Pistol—Traveler—Railroad Porter.**

A railroad passenger porter, who daily goes on his train 150 miles, is a traveler, and exempt from liability for carrying a pistol.

**2.—Same.**

A porter on a railroad passenger train, while engaged in his business as such in connection with said train, is at his place of business and has a right to carry a pistol at his place of business.

**3.—Same—Imminent Danger.**

See opinion for facts stated upon which it is held the jury should have found for defendant upon his issue of fear of such imminent danger of attack upon his person, as not to admit of the arrest of his assailant, and which justified him in carrying a pistol.

Appeal from the County Court of Limestone. Tried below before Hon. James Kimbell, Special County Judge.

Appeal from a conviction of unlawfully carrying a pistol; penalty, a fine of $25.

The opinion states the case.

No brief on file for appellant.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, Judge.—Appellant was convicted of unlawfully carrying a pistol, and fined $25; hence this appeal.

The evidence shows that appellant was a regular porter of the passenger train on the Houston & Texas Central Railroad running from Ennis to Houston, and that it was his duty, among other things, to look out for "bums," or persons stealing rides on the train, and to load and unload baggage at all stations, sweeping out cars, and generally to follow the directions of the conductor who was in charge of the train. He was also authorized, under instructions of the conductor, to keep all "bums" or persons who were not passengers off the train, or, if he found such persons on the train, to put them off. It was also shown in evidence that persons stealing rides frequently gave trouble to the trainmen, and frequently, when they were put off, they threw rocks, sticks, pieces of coal, and other things at persons who put them off; and sometimes such persons were armed with pistols and knives. The conductor testified that on this account, when he knew or believed such

persons were stealing rides on the train, he generally sent the porter and others of the train crew to make such persons get off the train.    On the particular night in question, when the train approached Mexia, a number of persons were found to be stealing rides on the train, and the conductor sent appellant forward to make them get off the blind baggage.    Twice, after the train stopped at the depot, it was stopped, in order to afford an opportunity to make such persons get off.    Among these "bums" was the prosecutor, Luther Herod.    When appellant went forward to clear the blind baggage of such persons as were intruding on the train, said Herod cursed appellant, and told him to "get away from here, you damn negro; I will cut your throat."    Herod jumped down from the train at the front end of the car, and started toward appellant with a knife, as he testified; and appellant called to him not to come on him with that knife, and fired his pistol in the air, to scare him.    The train then pulled out, but prosecutor, Herod, succeeded in getting on the train again.    Bentley, one of the train crew, heard Herod say that he was going to kill defendant.    This was communicated to appellant before they reached Groesbeck.    When the train stopped at Groesbeck, appellant, as was his duty, went forward to help put the baggage on the car, and carried his pistol in his hand.    As soon as he began to handle the baggage, Herod came up with something in his hand, which appellant took to be a knife or a pistol, but which in reality was a coupling pin.    Appellant immediately called out to those around, "Take that man away from here."    Herod replied, "You shot at me at Mexia, and I am going to kill you."    Appellant insisted on the crowd taking the man away, at the same time holding his pistol in his hand, as he testified, in order to protect himself.    At this juncture an officer, who happened to be at the train, interfered, and stopped the difficulty, and took appellant's pistol away from him.    It was also shown that appellant generally carried his pistol on the train in a grip or valise, which he kept in one of the cars; that on this particular night, when instructed by the conductor to keep the "bums" off the train, he got his pistol at Mexia, and kept it on his person from that time until after the trouble at Groesbeck.    Appellant set up three defenses to the State's charge: (1) That he was a traveler, and as such had a right to carry a pistol; (2) that he had reasonable grounds for fearing an unlawful attack upon his person, and the danger was so imminent and threatening as not to admit of the arrest of the person about to make such attack upon legal process; (3) that he was at his own place of business, and had a right to carry arms.    In regard to his defense of being a traveler, we would reiterate what was said in Bain v. State, 38 Texas Crim. Rep., 635, that under the general term "traveler," which means one who travels in any way, one who makes a journey, one who goes from place to place, appellant would seem to come under this definition; for going on a train every day some 150 miles would, in common parlance, constitute him a traveler.    We are of opinion that appellant was both a traveler and was at his place of business at the time he is charged to have carried

said pistol. His business constituted him a traveler, and he was engaged in his business while traveling, and that business required him to be alert, and at his post of duty, not only to protect the train against any interlopers or persons who were not authorized to ride thereon, but to aid in protecting the passengers themselves when called upon by the conductor in charge of the train. In our opinion he had a right, both as a traveler and as being at his place of business, to carry a pistol. Appellant requested both of these issues to be submitted to the jury, but the court refused to entertain his request. In this, we think, there was error. The court did submit to the jury the issue as to whether appellant had been threatened, and was in imminent danger at the time he was shown to have carried the pistol. However, the jury found against him on this issue. In this, we think, the jury was at fault, as the testimony, in our opinion, unquestionably showed that in the performance of his duty he had offended prosecutor, Herod, who had threatened his life; and at the time appellant was discovered carrying the pistol Herod was in the act of making an onslaught on him with a coupling pin. As it transpired, his apprehension was well grounded; and the evidence further showed that he had no opportunity to have applied to a peace officer. The jury should have found in appellant's favor on this issue.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*