**Aslam Pervez MOOSANI, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 0034–94.

Court of Criminal Appeals of Texas,
En Banc.

Dec. 6, 1995.

Frank R. Hughes, Crosby, Brian W. Wice, Houston, for appellant.

Dan McCrory, Asst. Dist. Atty., Houston, Robert A. Huttash, State's Atty., Austin, for the State.

*OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW*

McCORMICK, Presiding Judge.

Appellant was convicted by a jury of the offense of unlawfully carrying a weapon. Punishment was assessed at a fine of $100 and confinement in the county jail for 180 days, probated for one year. The Fourteenth Court of Appeals affirmed appellant's conviction. *Moosani v. State,* 866 S.W.2d 736 (Tex.App.—Houston [14th] 1993). This Court granted appellant's petition for discretionary review in order to determine whether the Court of Appeals correctly applied the requisite proof to qualify for the exception to prosecution for carrying a pistol.

We find that the Court of Appeals' reasoning is correct and adopt it as our own. Accordingly, the judgment of the Court of Appeals is affirmed.

CLINTON, J., joins the opinion of the Court, observing that contrary to assertions by Judge BAIRD, dissenting at 572–73, the Second Amendment does not grant a right to bear arms unrelated to "a well regulated Militia." See *Masters v. State,* 685 S.W.2d 654 (Tex.Cr.App.1985).

OVERSTREET, J., concurs in the result.

WHITE, J., dissents.

BAIRD, Judge, dissenting.

We granted appellant's petition for discretionary review to determine whether the Court of Appeals erred in holding appellant was not entitled to assert a common law defense because he habitually carried a handgun. And, if appellant was not entitled to assert the common law defense, whether he was precluded from asserting the statutory defense of traveling. The plurality avoids these issues by simply adopting the opinion of the Court of Appeals. At an ever increas-

ing pace, a plurality of this Court is treating the issues before us with a glib nonchalance, *Gabriel v. State,* 900 S.W.2d 721, 728, n. 1 (Tex.Cr.App.1995) (Baird, J., dissenting), and resorting to judicial convenience, *Crittenden v. State,* 899 S.W.2d 668, 674 (Tex.Cr.App. 1995) (Baird, J., dissenting), in order to dispose of our docket. Believing the issues presented in this case are important and require greater thought and consideration than merely adopting the opinion of another court, I dissent.

### I.

Appellant was stopped, in front of the convenience store where he worked, for failing to use a turn signal. As appellant exited his vehicle, the police officer observed a handgun in a pocket of appellant's vehicle door. Appellant was arrested for unlawfully carrying a weapon. Tex.Penal Code Ann. § 46.02.[1] At trial, appellant contended he was entitled to the common law defense which permits one to carry a handgun between his home and work. The trial judge found appellant, who habitually carried the handgun between his home and place of business, was not entitled to assert the common law defense under *Cortemeglia v. State,* 505 S.W.2d 296 (Tex.Cr.App.1974). The Court of Appeals affirmed. *Moosani v. State,* 866 S.W.2d 736 (Tex.App.—Houston [14th Dist.] 1993) (*citing, Cortemeglia,* 505 S.W.2d at 296).

### II.

A person commits an offense if he intentionally, knowingly, or recklessly carries a handgun. Tex.Penal Code Ann. § 46.02(a). However, there are several statutory defenses to this offense. Tex.Penal Code Ann. § 46.02(b).[2] For example, a defendant may lawfully carry a handgun when "traveling." Tex.Penal Code Ann. § 46.02(b)(3). Additionally, we have recognized several common law defenses which arise when the defendant has a legitimate purpose to carry the weapon. *See generally, Deuschle v. State,* 4 S.W.2d 559, 560 (Tex.Cr.App.1927) (Op. on State's mtn. for rehearing). For example, a person has a legitimate purpose for carrying a weapon to any of the places excepted by § 46.02(b), such as his home or place of business. *See e.g., Pressler v. State,* 19 Tex. App. 52, 53 (right to carry handgun home from place of purchase); *Impson v. State,* 19 S.W. 677 (Tex.App.1892) (right to carry pistol to proper place to have weapon repaired); *Waddell v. State,* 37 Tex. 354 (1873) (right to carry a handgun home from the place of purchase); *Bowles v. State,* 66 Tex.Crim. 550, 147 S.W. 869 (App.1912) (right to carry gun home from place of business); *Boissean v. State,* 15 .S.W. 118 (Tex.App.1890) (right to carry a gun from residence to place of business in order to clean the gun); *Sanders v. State,* 20 S.W. 556 (Tex.Cr.App.1892) (right to carry pistol from residence to place of business); *Campbell v. State,* 28 Tex.App. 44, 11 S.W. 832 (1889) (right to carry a gun from

---

**1.** Effective September 1, 1994, § 46.02 and § 46.03 were consolidated. Tex.Penal Code Ann. § 46.02 (1995). Even though appellant's conviction occurred prior to the consolidation, all references herein will be to the 1995 version of § 46.02, unless otherwise noted.

**2.** Tex.Penal Code Ann. § 46.02(b) provides:

(b) It is a defense to prosecution under this section that the actor was, at the time of the commission of the offense:

(1) in the actual discharge of his official duties as a member of the armed forces or state military forces as defined by Section 431.001, Government Code, or as a guard employed by a penal institution;

(2) on his own premises or premises under his control unless he is an employee or agent of the owner of the premises and his primary responsibility is to act in the capacity of a security guard to protect persons or proper-

ty, in which event he must comply with Subdivision (5);

(3) traveling;

(4) engaging in lawful hunting, fishing, or other sporting activity on the immediate premises where the activity is conducted, or was directly en route between the premises and the actor's residence, if the weapon is a type commonly used in the activity;

(5) a person who holds a security officer commission issued by the Texas Board of Private Investigators and Private Security Agencies, if:

(A) he is engaged in the performance of his duties as a security officer or traveling to and from his place of assignment;

(B) he is wearing a distinctive uniform; and

(C) the weapon is in plain view; or

(6) a peace officer, other than a person commissioned by the Texas State Board of Pharmacy.

temporary home to a permanent home); *and, Stilly v. State,* 27 Tex.App. 445, 11 S.W. 458 (1889) (Person has right to carry handgun when "he ha[s] reasonable grounds for fearing an unlawful attack on his person."). These common law defenses are not unlimited, a defendant is entitled to assert such a defense only if: 1) the purpose for carrying the weapon was legitimate and not contrived; (2) the route taken was practical; and, (3) the defendant's journey proceeded without undue delay or unreasonable deviation. *See generally, Cassi v. State,* 86 Tex.Crim. 369, 216 S.W. 1099 (App.1919).

In connection with these common law defenses, we have considered whether a defendant may carry a handgun habitually. *Cortemeglia,* 505 S.W.2d 296; *and, Chambers v. State,* 34 Tex.Crim. 293, 30 S.W. 357 (App. 1895). Cortemeglia was arrested for driving while intoxicated and a handgun was discovered in his glove compartment. Cortemeglia contended he had a legitimate purpose to carry the weapon, namely that he was in possession approximately $14,000.00 in cash and checks. There was further evidence Cortemeglia habitually carried large sums of money to his home from his store every Friday, taking the weapon for protection. Each Monday he returned the handgun to his store. Relying on *Chambers,* we held Cortemeglia was precluded from relying upon a common law defense because he habitually carried the handgun. *Cortemeglia,* 505 S.W.2d at 297.

### III.

Appellant concedes that he habitually carried his handgun to and from his place of business. However, appellant asks us to overrule *Chambers* and its progeny which preclude the assertion of a common law defense if the carrying is habitual.

### A.

We may not overrule our previous opinions simply because we disagree with them. The doctrine of *stare decisis* demands respect for previous opinions:

One of the principles of our legal system is that when a point of law has once been settled by decision of the highest court of

the state, the decision becomes the law of the state and forms a precedent that is not afterward to be departed from.

16 Tex.Jur.3d Courts, 451, § 119. *McGlothlin v. State,* 896 S.W.2d 183 (Tex.Cr.App. 1995). It is the doctrine of *stare decisis* which provides certainty and structure to the criminal justice system, and once a rule is deliberately adopted and followed, it should not be abandoned. *Id.,* 896 S.W.2d at 189 (*citing, Gearheart v. State,* 81 Tex.Crim. 540, 197 S.W. 187, 188–189 (App.1917)).

Only when an earlier decision was clearly erroneous, or some special justification arises, may established precedent be overturned. *Ex parte Porter,* 827 S.W.2d 324, 331 (Baird, J., dissenting). This special justification may include: the precedent was based on conditions which no longer exist; the inability of the lower courts to apply the precedent; or our subsequent opinions conflict with the precedent. *Id.* (*citing,* 105 Harv.L.Rev. 177 (1991)). Based on these guidelines, and giving due deference to our earlier decisions, I believe the time has come to overrule the habitual limitation *Chambers* placed upon common law defenses.

### B.

A careful review of *Chambers* demonstrates its holding was clearly erroneous. Before *Chambers,* evidence that a defendant habitually carried a weapon was admissible to determine whether the purpose for carrying the weapon was legitimate or contrived. In *Sanders v. State,* 20 S.W. 556 (Tex.Cr. App.1892), the defendant contended he held a common law defense because he carried the weapon to his place of business for the purpose of permitting the owner to redeem it. *Ibid.* The State was permitted to question Sanders about the number of times he had previously carried the weapon. We held the line of questioning was relevant to determine the truthfulness of Sanders' common law defense:

... The statement of facts does not warrant the conclusion that defendant was returning the pistol to the owner ... While the question of intent or honesty of purpose, in a proper case, may excuse or

justify carrying a pistol, yet such matters cannot be simulated for the purpose of evading or violating the law.

*Id., citing, Stilly,* 11 S.W. 458; *and, Impson v. State,* 19 S.W. 677 (Tex.App.1892). Consequently, a defendant was entitled to assert a common law defense but the State was entitled to test its validity with evidence that the defendant habitually carried a weapon.

Three years later, in *Skeen v. State,* 30 S.W. 218 (Tex.Cr.App.1895), without citation to authority, we held, for the first time, a defendant who *habitually* carried a weapon between his house and his place of employment could not assert his common law defense. We stated:

> ... The appellant, from the evidence, was in the habit of carrying the pistol, it seems, back and forth between his house and his business place. This is not permitted by the law, and does not come within any of the exceptions set forth in the statute.

*Id.,* at 219. However, on rehearing, we reconsidered this holding and held that Skeen's habitual carrying of a handgun *did not* preclude his use of the common law defense. *Skeen,* 30 S.W. 554 (Tex.Cr.App.1895) (op. on reh'g). Thus, *Skeen,* on rehearing, was consistent with *Sanders.*

Unfortunately, *Chambers* was decided in the time between the two *Skeen* opinions. In *Chambers,* the defendant asserted the common law defense of carrying his handgun from his home to his place of employment. *Id.* To assert the common law defense, we noted Chambers must prove a legitimate purpose to carry the weapon. However, we further held the habitual carrying of a weapon could never be legitimate. We stated:

> ... A person has a right, under the statute, to carry a pistol at his home and at his place of business, and there may be legiti-

mate occasions for his carrying the same between said places,—such as have been decided by this court,—but *we are not inclined to extend a construction of the statute so as to embrace an habitual carrying between one's home and his place of business.*

*Chambers,* 30 S.W. at 357.[3] Under this conclusion, a defendant who habitually carried a weapon was precluded from ever asserting a common law defense.

This conclusion was reached without citation to any authority, as was our conclusion in *Skeen* on original submission. Moreover, it contradicted our holding in *Sanders,* where we held evidence of habitual carrying could be used to rebut the truthfulness of the common law defense, but did *not* preclude one from asserting the common law defense. *Sanders,* 20 S.W. at 556. Because *Chambers* had no basis in law, and because it conflicted with both *Sanders* and the opinion on rehearing in *Skeen, Chambers* was clearly erroneous and, therefore, is not entitled to the deference of *stare decisis.*

### C.

Even if the habitual carrying limitation of *Chambers* was based in law, I would nevertheless hold that it was not entitled to the respect commanded by *stare decisis* because there has never been a justification for it.

If read alone, § 46.02(a) would prohibit one from ever possessing or carrying a weapon. Such a blanket prohibition would be unconstitutional because the Second Amendment of the United States Constitution and art. I, § 23 of the Texas Constitution provide the right to keep and bear arms.[4] To harmonize § 46.02(a) and the constitutions, the Legislature provided several defenses which allow

---

**3.** All emphasis is supplied unless otherwise indicated.

**4.** U.S. Const., amend. II provides:

> A well regulated Militia being necessary to the security of a free State the right of the people to keep and bear arms, shall not be infringed."

Tex. Const., art. I, § 23 provides:

> Every citizen shall have the right to keep and bear arms in the lawful defense of himself or the State; but the Legislature shall have pow-

er, by law, to regulate the wearing of arms, with a view to prevent crime.

Judge Clinton's concurring note cites *Masters v. State,* 685 S.W.2d 654 (Tex.Cr.App.1985), as holding the right to bear arms is limited to maintaining "a well regulated Militia." This is neither the law nor the holding of *Masters.* In fact, "militia" is not mentioned in either the majority opinion or Judge Clinton's concurring opinion in *Masters.*

the possession and carrying of weapons in some limited situations or locations. § 46.02(b); *see* n. 2, *supra*. However, as noted earlier, we have recognized several common law defenses in addition to those specified in § 46.02(b). For example, we recognized the common law defense authorizing one to purchase a handgun and take it home. *Pressler, supra; and, Waddell, supra.* Without this common law defense, it would be lawful to purchase a handgun but *unlawful* to remove it from the place of purchase. The constitutional right to have a weapon would be of little value if one were prohibited from transporting a weapon from its place of acquisition. Additionally, under § 46.02(b)(2) a person has the right to carry a handgun at home or work. However, there is no statutory right to carry a handgun between those locations. Consequently, without the common law exception of *Bowles,* supra, one would be forced to violate § 46.02(a) in order to possess the weapon at the places authorized by § 46.02(b)(2). We recognized the aforementioned common law defenses in order to uphold the constitutionality of § 46.02(a) and to make meaningful our constitutional right to keep and bear arms. *See, Deuschle,* 4 S.W.2d at 560.

However, these common law defenses are not available to those who carried handguns habitually. I believe there should be no such limitation. The frequency with which a weapon is carried is not dispositive of the question of whether the purpose is legitimate. Indeed, the reoccurring nature of the purpose may militate in favor of legitimacy. For example, employment is inherently habitual. Unless a person has two handguns, one at work and one at home, the weapon must be carried between the two locations in order to enjoy the rights guaranteed by our constitutions and § 46.02(b)(2). Just as a person may carry a handgun habitually when at home or at work, so too should a person be able to habitually carry a handgun between the two locations. A person should not be denied a common law defense simply because the legitimate purpose for carrying the weapon is reoccurring.

**D.**

For these reasons, I believe we should overrule *Chambers* and its progeny. Evidence that a defendant habitually carried a weapon should not preclude the defendant from asserting a common law defense to unlawfully carrying of a weapon. Common law defenses should be limited to defendants who have a legitimate purpose for carrying the weapon, the route taken must be practical and the transportation of the weapon must proceed without undue delay or unreasonable deviation. Evidence of habitual carrying should be admissible to determine whether the purpose for carrying the weapon was legitimate or contrived.

**IV.**

Appellant further contends he was entitled to the statutory defense of traveling under § 46.02(b)(3). I disagree. I do not believe the Legislature intended such a broad construction of traveling.

**A.**

To interpret a statute we look first to its plain language. *Boykin v. State,* 818 S.W.2d 782 (Tex.Cr.App.1991). When the statutory language is ambiguous, or leads to an absurd result, we consider extra-textual factors to determine legislative intent. Under, the plain language of § 46.02(b)(3), a person is entitled to a defense against prosecution under § 46.02(a) when "traveling." Because the Penal Code provides no definition for traveling, we may consult other sources and determine whether there is some commonly understood definition. Travel has many accepted definitions; among them are the following:

1. to go from one place to another, as by car, train, place, or ship, take a trip; journey 'to travel for pleasure'. 2. to move or go from one place or point to another. 3. to proceed or advance in any way.... 11. to journey or traverse ...

*Random House Unabridged Dictionary, Second Edition 2014 (1993);* and,

1a: to go on or as if on a trip or tour: journey ... c: to go from place to place as a sales representative or business agent ... 2a: to move or under go transmission

from one place to another ... 4a: MOVE-MENT, PROGRESSION....

*Merriam–Webster's Collegiate Dictionary* 1257 (1993). Thus, traveling may encompass anything from a journey to motion of any kind. While a journey might entail a lengthy trip, motion of any kind could be construed as any type of movement. Therefore, the plain language of § 46.02(b)(3) is ambiguous. Indeed, almost a century ago we noted the ambiguity and called for the Legislature to define traveling. *Bain v. State*, 38 Tex.Crim. 635, 44 S.W. 518 (App.1898).

Appellant would have us adopt the broadest definition of traveling, one which would include movement of any kind. However, this construction would lead to an absurd result because the exception would subsume the rule. For example, under appellant's construction of § 46.02(b)(3), an individual who carries a handgun throughout the day, every day, going from place to place would be traveling. Under such a construction we would be holding the Legislature intended to prohibit the carrying of a weapon in § 46.02(a), only to allow anyone capable of movement to have a statutory defense to prosecution. § 46.02(b)(3). Because the term traveling is ambiguous, we may look to extra-textual factors such as our prior decisions and the Legislature's subsequent approval of those decisions.

### B.

The traveling defense provided by § 46.02(b)(3) has remained unchanged since its promulgation in 1871. *Act approved April 12, 1871*, 12th Leg., R.S., ch. 34, § 1, 1871 Tex.Gen.Laws 25, 25, *reprinted in* 6 H.P.N. GAMMEL, LAWS OF TEXAS 927, 927 (1898); *Act of April 10, 1918*, 35th Leg., R.S., ch. 91, § 1, 1918 Tex.Gen.Laws 194, 194. *See,* Rev.P.C.1879, art. 319, Rev.P.C. 1895, art. 339, Rev.P.C.1911, art. 476, Vernon's Ann.P.C. (1925) art. 484, Vernon's Tex.Penal Code Ann. (1973) art. 46.03. However, over the years, we have considered the traveling defense a number of times. *See, Stilly,* supra; *Campbell v. State,* supra; *Imp-*

son, supra; *Bain,* supra; *Williams v. State,* 44 Tex.Crim. 494, 72 S.W. 380 (App.1903); *Hickman v. State,* 71 Tex.Crim. 483, 160 S.W. 382 (App.1913); *Williams v. State,* 74 Tex.Crim. 639, 169 S.W. 1154 (App.1914); *Mayfield v. State,* 75 Tex.Crim. 103, 170 S.W. 308 (App.1914); *Witt v. State,* 89 Tex.Crim. 368, 231 S.W. 395 (App.1921); *George v. State,* 234 S.W. 87 (Tex.Cr.App.1921); *Wortham v. State,* 95 Tex.Crim. 135, 252 S.W. 1063 (App.1923); *Hall v. State,* 102 Tex. Crim. 329, 277 S.W. 129 (App.1925); *Christian v. State,* 105 Tex.Crim. 562, 289 S.W. 54 (App.1926); *Grant v. State,* 112 Tex.Crim. 20, 13 S.W.2d 889 (App.1928); *Vogt v. State,* 159 Tex.Crim. 211, 258 S.W.2d 795 (App.1953); *Kiles v. State,* 398 S.W.2d 568 (Tex.Cr.App. 1966); *Allen v. State,* 422 S.W.2d 738, 739 (Tex.Cr.App.1967); *Smith v. State,* 630 S.W.2d 948 (Tex.Cr.App.1982); *and, Ayesh v. State,* 734 S.W.2d 106 (Tex.Cr.App.1987).

The primary purpose underlying the traveling defense is to allow persons traveling upon the public highways to protect themselves. In *Maxwell v. State,* 38 Tex. 170, 171 (1873), the Texas Supreme Court held, "the act prohibiting the carrying of deadly weapons was not intended to prevent persons traveling in buggies or carriages upon the public highway from placing arms in their vehicles for self-defense."[5] *See, Christian v. State,* 105 Tex.Crim. 562, 289 S.W. 54 (App. 1926) (Defendant who traveled 175 miles from Austin to Houston was traveling because the purpose of the traveling defense was to allow persons to protect themselves on the public highways.). Further, in *Waddell v. State,* 37 Tex. 354 (1872), the Texas Supreme Court equated "traveling" with a day long journey:

> Persons living remote from their county seats or market towns, where a day's journey going and coming is required, and where often, from the necessities of business, even a portion of the night is used, should be regarded as within the meaning of [the traveling defense].

*Id.,* at 356. Our later interpretations of the traveling defense are consistent with *Wad-*

---

**5.** At the time of this opinion, the Texas Supreme Court had jurisdiction over both civil and criminal appeals.

*dell. Stilly,* 11 S.W. 458 (Defendant who traveled fifty miles may carry his weapon.); *Impson,* 19 S.W. 677 (Defendant who carried his weapon sixty miles for repair was traveling.); *Thomas v. State,* 37 Tex.Crim. 142, 38 S.W. 1011 (App.1897) (Defendant who carried his weapon on a train from Brownwood to Ft. Worth and back was traveling.); *and, Williams v. State,* 44 Tex.Crim. 494, 72 S.W. 380 (App.1903) (Defendant who carried his weapon on a one-hundred fifty mile journey daily was traveling.). But not every journey falls within the traveling defense. In *George v. State,* 90 Tex.Crim. 179, 234 S.W. 87 (App. 1921), we held a shorter journey insufficient to constitute traveling:

> We have examined all the authorities cited by appellant and many others, and have found no case holding in substance that a man who goes a distance which can be covered in two hours, in the broad daylight, along a road where he was probably never out of sight of a number of houses, is held to be a traveler. We have found no case where a man is held a traveler whose absence was for less than a day.

*Id.,* 234 S.W. at 88. Thus, a defendant who travels a short distance, capable of being traversed in a short period of time, will not meet the traveling defense. *See, Williams v. State,* 74 Tex.Crim. 639, 169 S.W. 1154 (Tex. Cr.App.1914) (Defendant who carried his weapon on a twenty-six mile journey was not traveling.); *Wortham v. State,* 95 Tex.Crim. 135, 252 S.W. 1063 (App.1923) (Defendant may not carry a weapon on a thirty-five mile journey lasting one to one and half hours.); *Hall v. State,* 102 Tex.Crim. 329, 277 S.W. 129 (App.1925) (A journey to a point thirty or thirty-five miles distant was not traveling within the statute.); *and, Vogt v. State,* 159 Tex.Crim. 211, 258 S.W.2d 795 (App.1953) (Defendant may not carry a weapon on a five hour journey.). Additionally, when the defendant's journey requires that he be absent from home overnight, we have construed the journey to constitute "traveling." *See, Grant v. State,* 112 Tex.Crim. 20, 13 S.W.2d 889, 891 (App.1928) (Defendant who traveled by wagon fifty miles and stayed overnight was traveling.); *Williams v. State,* 114 Tex.Crim. 177, 21 S.W.2d 672, 673 (App.1929) (Defendant

who drove from his home in Mineola (Wood County) to Dallas to stay overnight, conducting business along the way, was traveling.); *and, Allen v. State,* 422 S.W.2d 738, 739 (Tex.Cr.App.1967) (Defendant who made a one hundred and twenty mile trip to see his family over a weekend was traveling.).

Moreover, when a journey ceases the defendant is no longer traveling. But, a temporary cessation of the journey is allowed if the defendant remains engaged in business conducted with his journey. *Stilly,* supra; *and, Evers v. State,* 576 S.W.2d 46, 50 (Tex.Cr. App.1978) (Once the defendant arrives at his destination, secures a room and remains over night, he ceases to be a traveler). *See also, Ballard v. State,* 74 Tex.Crim. 110, 167 S.W. 340 (App.1914).

When the Legislature amends other portions of the statute, but declines to change the specific language before the Court, we presume legislative approval of our statutory interpretations. *Marin v. State,* 891 S.W.2d 267, 271–272 (Tex.Cr.App.1994) ("[W]hen the Legislature meets, after a particular statute has been judicially construed, without changing that statute, we presume the Legislature intended the same construction should continue to be applied to that statute."). Further, the Code Construction Act provides, "when examining amendments to existing legislation to determine legislative intent, it is presumed that the legislature was aware of case law affecting or relating to the statute." *Id.,* citing, Tex.Gov't Code Ann. § 311.023(3); *and, Grunsfeld v. State,* 843 S.W.2d 521, 523 (Tex.Cr.App.1992).

Since the Legislature has not defined traveling in its many sessions since we began interpreting it, I can confidently state that our past interpretations are in harmony with the Legislature's intent. Thus, to meet the traveling defense, a defendant must demonstrate that, at the time of arrest, he was on a journey, the duration of which was substantial. Although the traveling defense does not require an overnight stay, such evidence will often militate toward a finding the defendant was traveling. *George, supra; and, Christian,* 289 S.W. at 54.

### C.

Appellant was not engaged in a substantial journey, but commuting between his home and place of employment. Although the record contains no evidence of the duration of appellant's journey, it is clear appellant lived and worked in the Harris County area. Such evidence has never been sufficient to constitute traveling under § 46.02(b)(3) or its predecessors.

### V.

This petition presents two issues that should be resolved by this Court. Rather than avoiding our responsibilities and taking the easy way out by adopting the opinion of another court, we should recognize that our opinion in *Chambers* was erroneous, overrule it and hold appellant was entitled to assert his common law defense in spite of his habitual carrying of the handgun. Because the plurality fails to do so, I dissent.

MEYERS, Judge, dissenting.

Our law provides that "[a] person commits an offense if he intentionally, knowingly, or recklessly carries on or about his person a handgun, illegal knife, or club." Texas Penal Code § 46.02(a). However, this prohibition "do[es] not apply to a person ... traveling[,]" Texas Penal Code § 46.03(a)(3), and if raised by the evidence, it is the State's burden to prove beyond reasonable doubt that an accused was not "traveling" at the time of the alleged offense.

The facts are not in dispute. Appellant is the night manager of a convenience store. He keeps a handgun at the store to defend himself against robbers. When he is not working, he keeps the same gun at home. To get the gun from one place to the other, he carries it with him when he travels back and forth. Appellant maintains that, under these circumstances, the evidence is insufficient to sustain his conviction because no rational trier of fact could have concluded beyond reasonable doubt that he was not "traveling" at the time of the alleged offense.

The Court of Appeals, relying on *Cortemeglia v. State*, 505 S.W.2d 296 (Tex.Crim.App. 1974), held that the "traveling" exemption does not apply to persons who carry weapons

habitually, and that, in this case, a "rational trier of fact could have found beyond a reasonable doubt that Moosani was carrying his weapon habitually." *Moosani v. State*, 866 S.W.2d 736, 738–39 (Tex.App.—Houston [14th Dist.] 1993). We granted discretionary review to clarify some of the circumstances under which carrying a weapon is lawful in Texas society. Tex.R.App.Proc. 200(c)(2).

At the outset, I would acknowledge that the Court of Appeals is right about *Cortemeglia*. Our opinion in that case does hold that a person may travel with a handgun from one place of lawful possession to another so long as he doesn't do it very often. But that case construes a statute which has not existed in our law for more than twenty years. *See* Vernon's Ann.Penal Code. art. 483 *et seq.* (West 1952), repealed by Acts 1973, 63rd Leg., p. 991, ch. 399, § 3(a), eff. Jan. 1, 1974. As the *Cortemeglia* Court itself explained,

> [t]his case was tried before the effective date of the new Penal Code and we express no opinion as to the effect Title 10, Ch. 46, Secs. 46.01 et seq., Acts 1973, 63rd Leg., Ch. 399, p. 962, may have upon the rule of law enunciated[.]

Thus, *Cortemeglia*, by its own terms, does not control because the instant cause was prosecuted under the "new Penal Code."

Nevertheless, our current statute does not differ on it face in any material respect from the one construed in *Cortemeglia*. *See Evers v. State*, 576 S.W.2d 46 (Tex.Crim.App.1978). Both provide that the law against carrying weapons does not apply to persons "traveling." Penal Code § 46.03(a)(3) (West 1994); Penal Code art. 484 (West 1952). The issue, then as now, is whether conduct such as that in which appellant was engaged may constitute "traveling" under the statute.

Appellant urges us to reconsider the holding in *Cortemeglia*, and there are some compelling reasons to do so. As the practice commentary for section 46.03 (West 1989) notes,

> [s]ubdivision (3) is derived directly from prior law without any clarification, and the traveler's exemption was one of the most enigmatic provisions of the prior weapons

offense. The courts never defined "traveling" but in each case considered distance, time, and mode of travel.

As a result, the case law in this area is difficult to reconcile with the legislation it construes, since neither the former statute nor the one which applies to this case purports to condition availability of the "traveling" exemption upon any of these factors, or upon the frequency with which an accused actually travels from one place to another. Rather, it appears that the Court simply fabricated these conditions from whole cloth over an extended period of time. *See, e.g., Stanfield v. State,* 34 S.W. 116 (Tex.Crim. App.1896); *Kemp v. State,* 116 Tex.Crim. 90, 31 S.W.2d 652 (1930); *Kiles v. State,* 398 S.W.2d 568 (Tex.Crim.App.1966).

While such an *ad hoc* judicial approach as one finds in opinions like *Cortemeglia* and its predecessors may once have been thought consistent with the role of courts in our government, we no longer take quite so casual an attitude toward the implementation of statutes passed by the legislature. Rather, it is now the preferred method of this Court to read all such statutes according to their plain terms, understood as common acceptation in ordinary English allows, unless specially defined by the legislature itself. *Boykin v. State,* 818 S.W.2d 782, 785–786 (Tex.Crim. App.1991).

Considered from this perspective, it is apparent that the meaning of "travel" in ordinary parlance does not depend in any degree upon the purpose or frequency of excursion, the mode of transportation, the distance covered, or the time of day. These criteria for the legality of carrying a weapon in Texas were all devised by the Court in order to implement what it thought the law was meant to accomplish or should have been meant to accomplish, and not to effectuate the plain meaning of the word "traveling."

In the English language, "travel" may take any of the following meanings, depending upon the context in which it is used.

1: to go on or as if on a trip or tour: JOURNEY 2: to move as if by traveling: PASS <news ˜s fast> 3: ASSOCIATE 4: to go from place to place as a salesman 5: to move from point to point <light waves ˜ very fast> 6: to journey over or through <˜ing the highways>

*The New Merriam–Webster Dictionary,* p. 763 (1989). The context in which the word appears in section 46.03(a)(3) of the Penal Code does not plainly suggest that any of these meanings, with the exception of "associate," is inapplicable or that any one meaning was intended to the exclusion of others. Neither can the word be considered ambiguous or absurd as it is used in the statute, since there is nothing inconsistent or contradictory about employing the word as the legislature actually did to exempt all conduct which the ordinary meaning of "travel" includes. Under these circumstances, the word should be understood by the courts to have the broadest possible meaning permitted by common usage, just as it would be understood by any competent English language speaker reading the statute in context for the first time. *Vernon v. State,* 841 S.W.2d 407, 409–10 (Tex.Crim.App.1992).

The State urges us not to take this approach but to construe the traveling exemption much as is was in the past, mainly because a more liberal interpretation could result in people "regularly arming themselves as they move about the city." Admittedly, this scenario is alarming, although it is not apparent to me that all movement within a city may fairly be characterized as "traveling" in ordinary English. But if the prosecuting attorney or others think some extraordinary definition of "traveling" is necessary to prevent this dangerous prospect, they should take their complaint to the legislature, where they will find people with authority to amend the statute. They will find no such people on this Court.

The extent of our power to change the law is limited to judicial review and statutory construction. The former authority permits us to set aside statutes when they conflict with the constitution. The latter permits us to resolve ambiguities within statutes and to harmonize them with one another. Neither authorizes us to rewrite statutes in order to make our society a better place. That enviable task is reserved to the legislature. Our job, and that of every court with criminal jurisdiction in this State, is to implement the

law as the legislature has written it. Accordingly, to the extent that *Cortemeglia* and other of our opinions construing the "traveling" exemption are to the contrary, I would overrule them.

Because the Fourteenth Court of Appeals evaluated the sufficiency of evidence in this case with reference to an extraordinary definition of "traveling" not found in the statute, and because I would now abandon that extraordinary court-made definition, my vote is to vacate the judgment of the Court of Appeals and remand this cause there for reconsideration of appellant's sufficiency points. Because a majority of this Court will not do so, I respectfully dissent.

MANSFIELD, Judge, dissenting.

The facts in this matter are undisputed. Appellant is the night manager of a convenience store in north Houston. Because he often carries the store's receipts and is concerned about robberies, he keeps a handgun at the store and in his car while driving between the store and his home in Baytown, a distance of approximately thirty miles.

On April 6, 1992, appellant was followed into the parking lot at his convenience store by a police officer, who observed a traffic violation apparently committed by appellant. As the officer approached the car, he observed a handgun inside. Appellant was immediately taken into custody for carrying a weapon in violation of Texas Penal Code § 46.02. He was tried and convicted, with punishment of 180 days in the county jail, probated for one year, and a fine of $100. The Fourteenth Court of Appeals affirmed. *Moosani v. State*, 866 S.W.2d 736 (Tex. App.—Houston [14th Dist.] 1993).

Texas Penal Code § 46.02(a) (1992) provides that a person commits an offense if he intentionally, knowingly or recklessly carries on or about his person a handgun, club or illegal knife. An offense under this section is a Class A misdemeanor, unless committed on premises licensed to sell alcoholic beverages, in which case the offense is a third degree felony. However, it is a defense to prosecution under § 46.02(a) if the individual, at the time of the offense, is at home or on premises under his control. *See* Tex.Penal Code § 46.03(a)(2) (1992).

Clearly, appellant has a right to possess a handgun at his home. As night manager of the convenience store, he also has a right to possess a handgun there since he has the premises under his control. If he were merely an employee, he would not have the right to possess a weapon at the convenience store, lacking control over same as a non-manager.

This Court has issued a series of rulings concerning § 46.03(a)(3), which states that "traveling" is a defense to prosecution under § 46.02(a). *See, e.g., Cortemeglia v. State*, 505 S.W.2d 296 (Tex.Crim.App.1974); *Evers v. State*, 576 S.W.2d 46 (Tex.Crim.App.1978); *Kiles v. State*, 398 S.W.2d 568 (Tex.Crim. App.1966). Relying on *Cortemeglia*, the Court of Appeals upheld the conviction in this case, claiming that appellant's driving back and forth to work is habitual and therefore not "traveling." If, in fact, appellant had been going to a friend's home, shopping, or just driving around, I would agree that the conviction should be upheld. Alternatively, it is clear that had he been stopped on his way to Dallas, he would have been "traveling" as that term is defined in *Cortemeglia*.

However, this is *not* a traveling case. It is undisputed that appellant was merely transporting his handgun from one place where it was legal for him to possess it to another such place. The only practical means by which he could do so was by car. This Court held in *Boykin v. State*, 818 S.W.2d 782 (Tex.Cr.App.1991), that it would, when interpreting a statute, focus on the statutory language itself and would strive to discern its fair and objective meaning as of the time of enactment. The Court held that " . . . where application of a statute's plain meaning would lead to absurd consequences that the Legislature could not possibly have intended, we should not apply the language literally." *Boykin*, at 785.

Consistent with the Court's reasoning in *Boykin*, I believe it was the intent of the Legislature, when it enacted § 46.03(a)(2), that it is a defense to prosecution under § 46.02(a) that, at the time of the carrying of the weapon, the individual was on his way

from his home to his place of business provided he is either an owner or manager of the business. Thus, on the undisputed facts of this case, no rational jury could have found that the § 46.03(a)(2) defense was inapplicable to appellant's conduct.

Accordingly, I would reverse the judgment of the Court of Appeals and remand this case to that court for rendition of a judgment of acquittal.[1]

---

1. Although the question is not raised in appellant's petition for discretionary review, it is my opinion that appellant may have had a right to carry a weapon, given the facts presented, under the Second Amendment to the United States Constitution and/or Article I, § 23, of the Texas Constitution.