### J. H. HUNT v. THE STATE.

#### No. 4072. Decided February 12, 1908.

**Carrying Pistol—Traveler—Charge of Court.**

Where upon trial for unlawfully carrying a pistol, the evidence showed that the defendant was traveling, and that on his journey there was a brief incidental delay, the charge of the court which instructed the jury on the question of traveling, among other things, that if defendant engaged in anything not connected with his business or journey to find him guilty, was reversible error. Following Quinn v. State, 50 Texas Crim. Rep., 209; Granger v. State, 50 Texas Crim. Rep., 488. Distinguishing Irvin v. State, 51 Texas Crim. Rep., 52; Navarro v. State, 50 Texas Crim. Rep., 326.

Appeal from the County Court of Denton. Tried below before the Hon. Lee Zumwalt.

Appeal from a conviction of unlawfully carrying a pistol; penalty, a fine of $100.

The opinion states the case.

*Mac Taylor,* for appellant.—On question of charge of court, in addition to the cases cited in opinion, Mays v. State, 51 Texas Crim. Rep., 32; 19 Texas Ct. Rep., 100; Price v. State, 34 Texas Crim. Rep., 102; 29 S. W. Rep., 473.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—Appellant was charged with unlawfully carrying a pistol, and on trial before the county court of Denton County, was convicted of this offense, and his punishment assessed at a fine of $100.

The facts, briefly, show that appellant lived in Wise County and about October 6, 1906, went from there to a farm which he owned in Denton County, near the town of Aubrey, a distance of about thirty-five miles, and that his purpose in going there was to have a settlement with one McAfee, his tenant, and to adjust another matter with a man named Craig, who lived near his farm. The evidence shows that appellant stayed over night with Craig on Saturday night, transacted his business with him, and went to McAfee's about noon on Sunday, and discussed some business matters with him, and started home about the middle of the afternoon. There was some evidence that prior to his

leaving Craig's to return home that Craig told him that Shellie Sizemore and Walter Meadows, to whom he (appellant) was somewhat indebted, were threatening to do him some violence. For this reason, it seems, appellant, on his return home took a somewhat indirect route, as he says, to avoid the necessity of passing Sizemore's house. This is not seriously contested. While going along his journey home, in a public road, appellant came upon Walter Meadows and Shellie Sizemore, his father and another party, who was sitting on the side of the road along which appellant was traveling. When he (appellant) drove up he was accosted by the witness Meadows, who asked him for a settlement of certain indebtedness, which it seems appellant was due him. Appellant asked him to get in the buggy, and they would talk the matter over. Meadows got in the buggy, and the two drove about twenty yards on the road and stopped. When they had about reached an adjustment of the unsettled business, the witness Sizemore came up to where appellant was still sitting in his buggy, and demanded payment of what was due him. Appellant proposed, it seems, to give him an order for the money due him on one McCaskey. This Sizemore declined to accept, and said he was going to have his money. There is some difference in exactly what happened from this point in the testimony, but a fair summary of the evidence is that the demand of Sizemore for the payment of the money in cash was quite peremptory and in such manner as to anger appellant, who said to him that he had been trying to bulldoze him, and that the matter had gone far enough, and that if he wanted to fight to put his hat on the ground. This suggestion was very promptly accepted by Sizemore, who promptly placed his hat on the ground as suggested. Appellant claims that Sizemore came at him with a dirk. This was denied. All the testimony is, however, that appellant drew his pistol on both Sizemore and Meadows, and that Meadows left and that Sizemore halted, and later backed off a short distance. Thereupon, appellant resumed his journey, continued without being molested, and reached home in the night-time the next morning.

In this state of the record, the court below gave the following charge: "If you believe from the evidence beyond a reasonable doubt that the defendant had on his person a pistol as charged, and if you further believe from the evidence that he was not a traveler, or if he was a traveler, but engaged in anything not connected with his business or journey as such traveler, then you will convict the defendant, and assess his punishment as above set out." This charge was specifically excepted to on the ground that it was misleading, for the reason that the words "engaged in anything not connected with his business or journey," included delays incident to the journey, during which persons traveling do not lose their exemption from the provisions of the statute for unlawfully carrying arms; and that said portion of the charge is further misleading in that the evidence fairly raises the issue of delay incident to the journey, and nowhere in said charge is the jury instructed as to such delays or the facts bearing on such delays. In this connection counsel for appellant

requested the court to charge the jury as follows: "If you believe from the evidence in the case that the defendant was travling from his home in Wise County, near Decatur, to his farm in Denton County, on business, and returning had a pistol on his person, you will find the defendant not guilty." We think the court erred in his charge to the jury in view of the facts in this case. In the case of Irvin v. State, 51 Texas Crim. Rep., 52, 100 S. W. Rep., 779, the court say: "Now the law is on this subject, that appellant has a right as a traveler to carry a pistol, but if he goes about some other business or pursuit not connected with his journey, he ceases to be a traveler, and would then be amenable to the law, but some delay incident to his journey would not deprive him of his defense of a traveler." As illustrating what is meant, in the case of Quinn v. State, 50 Texas Crim. Rep., 209, 96 S. W. Rep., 33, this court held, that defendant had a right to stop on his road home, while carrying a pistol and demand an explanation of prosecuting witness for an insult offered to defendant's wife. In the case of Granger v. State, 50 Texas Crim. Rep., 488, 98 S. W. Rep., 836, it is held that a traveler is not required to take the shortest route home. In this case appellant was traveling along a public road on his journey home. He did not stop of his own volition, but was accosted and stopped by others while pursuing the even tenor of his way. The charge of the court is that, if he was "engaged in anything not connected with his business or journey as a traveler" he should be convicted. We can well understand how on his journey, appellant could have had little expectation and less desire of meeting either Meadows or Sizemore, but to say and hold that when in pursuit of his journey he is accosted by some one whom he owes, and stops his journey by request for a few minutes to discuss with the debtor the liquidation of his indebtedness, that this shall deprive him of his defense, it seems to us is going much farther than the court should have gone. It should, in fairness, be stated that the charge of the court conforms very closely to the language used in the opinion in the case of Navarro v. State, 50 Texas Crim. Rep., 326, 96 S. W. Rep., 932, but the facts in that case and this case are so utterly dissimilar that the language applicable to the facts in the Navarro case would be wholly misleading as applied to the facts in this case. In the Navarro case the defendant sought to justify on the ground that he was a traveler. The facts showed, as stated in the opinion, that while on his journey, the defendant in that case came to a ferry going to the Territory; but instead of crossing on the ferry, he turned aside from his journey, and went to a neighboring house, and began drinking whisky, and entered on a carousal, and according to the testimony of the State, raised a difficulty with some one at the house. In that case the court say, as a traveler he was protected while going to the ferry, and was protected in carrying the pistol on his return home, but when he stopped, turned aside, and began drinking whisky with other people and carousing, he was not in pursuit of his journey and engaged in business connected therewith, and consequently was not protected by the exemption in favor of travelers. In

this case appellant was never out of the public road.  He stopped on his journey, not of his own volition, but at the request of another in respect to a business matter.  The delay was incidental, brief and transitory, was a mere incident of the journey, which was resumed as soon as the matter in hand had been briefly discussed.  We think the charge complained of should not have been given, and unless the evidence on another trial can be substantially strengthened, we do not think, as it appears to us, that a conviction should be sustained.

For the error discussed, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*