James W. BIRCH, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–96–00294–CR.

Court of Appeals of Texas,
San Antonio.

June 4, 1997.

Mark Stevens, Regina L. Stone–Harris, San Antonio, for Appellant.

Edward F. Shaughnessy, III, Assistant Criminal District Attorney, San Antonio, for Appellee.

Before RICKHOFF, GREEN and JOHN F. ONION, Jr.[1], JJ.

## OPINION

JOHN F. ONION, Jr., Justice (Assigned).

This appeal stems from a conviction for unlawfully carrying a handgun. *See* TEX. PENAL CODE ANN. § 46.02(a) (Vernon 1994). Appellant James W. Birch was found guilty by a jury. The trial court assessed his punishment at sixty days in the county jail and a fine of two hundred and fifty dollars.

## POINTS OF ERROR

Appellant advances eleven points of error divided into jury charge errors and errors in the admission of evidence. First, appellant urges that the trial court erred in refusing to instruct the jury on the defense of "traveling." The next four points of error relate to the trial court's denial of special requested charges on the scope of the search of appellant's trunk, on whether the truck's console was locked, and on whether arresting Officer Wright had probable cause to stop appellant for speeding or had reasonable suspicion to detain appellant. The remaining six points of error concern the admission of evidence that appellant exercised his constitutional right to remain silent, invoked his right to remain silent after being given the *Miranda*[2] warnings and again after being arrested, in the admission of a videotape, and evidence of extraneous offenses.

**1.** Assigned to this case by the Chief Justice of the Supreme Court of Texas.

## FACTS

Officer Alex Wright of the Hill Country Village Police was on patrol about 5:25 p.m. on August 4, 1995, when he observed a pickup truck traveling "very fast" in a 30 miles per hour speed zone. Wright activated his radar unit and clocked the speed of the pickup truck at 42 miles per hour. Officer Wright turned on the overhead lights of his patrol vehicle, reversed his direction, and followed the pickup truck, which soon stopped. Wright identified appellant as the driver of the truck who exited his truck before the officer approached and was leaning on the side of the truck for support. Wright smelled beer on appellant's breath and observed that appellant's speech was slurred. Appellant failed two field-sobriety tests and refused to perform the third. Officer Wright arrested appellant, handcuffed him, and placed him in the patrol car. The officer then proceeded to make an inventory search of the truck before having the vehicle towed. In the console of the truck, which Wright found ajar, he discovered a loaded nine millimeter semi-automatic pistol with two clips of ammunition nearby. The truck was later towed and appellant was taken to the Hollywood Park Police Department. Appellant was found to have $530 on his person. The custody of the pistol was established and it was shown by expert testimony to be in working order.

Appellant testified that he was a carpenter and, at the time in question, was working at a job site in the Hill Country Village area of San Antonio. On August 3, 1995, he left work and drove to his Bexar County home. There, he changed clothes and packed an overnight bag in preparation for a trip to San Marcos in Hays County to see his girlfriend because it was her birthday. He acknowledged that he took his pistol from the closet with three clips or magazines of ammunition and a gun case and placed these items in the console of his truck and locked the console. He then drove the fifty-five miles to San Marcos. After the birthday dinner, appellant spent the night in San Marcos.

**2.** *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Appellant left San Marcos the next morning, August 4, 1995, at 5:30 a.m. because by 7:00 a.m. he was required to be at the job site. Reaching the San Antonio area, he stopped for a quick breakfast and obtained two tacos for lunch. He then drove directly to the job site, arriving at 6:55 a.m. Because his residence was some eight to ten miles from the job site, he did not attempt the round trip in the heavy morning traffic. After working that day, appellant acknowledged that he drank two beers at the job site and accepted a third beer as he was leaving for home. Shortly thereafter, he was stopped by Officer Wright. Appellant stated that his gun had been locked in the truck's console from the time he left home. The console's key was in a coin box on top of the console at the time of his arrest.

Kenneth Nesbitt's testimony placed appellant in San Marcos on the night of August 3, 1995. Nesbitt saw appellant in bed watching television as late as 11:55 p.m. and was of the opinion appellant was spending the night in San Marcos.

Appellant was charged with both driving while intoxicated and unlawfully carrying a handgun. We are informed that severance was granted. Under any circumstance, appellant was prosecuted only for unlawfully carrying a handgun.

## FAILURE TO CHARGE ON DEFENSE

In his first point of error, appellant complains that the trial court erred in refusing to instruct the jury on the defense of traveling despite a timely objection and a special requested charge.

A person commits an offense if he intentionally, knowingly, or recklessly carries on or about his person a handgun, illegal knife, or club. TEX. PENAL CODE ANN. § 46.02(a) (Vernon 1994). It is a "defense"[3] to prosecution under section 46.02(a) if the actor was "traveling" at the time of the commission of

the offense. *See* TEX. PENAL CODE ANN § 46.02(b)(3) (Vernon Supp.1997)[4]. *See also Moosani v. State*, 914 S.W.2d 569, 570 (Tex. Crim.App.1995) (Baird, J., dissenting).

The State questions whether appellant was a traveler at all, but contends that the trial court did not err in refusing to charge on the defense of traveling because as a matter of law appellant was not a traveler at the time he was stopped by Officer Wright. Appellant urges that whether he was a traveler was an issue of fact for the jury, not a question of law for the trial court. Appellant contends that he was a traveler and there was no improper deviation from his journey, but under any circumstances, there was a legitimate purpose and a right to take his gun to his home.

## TRAVELING DEFENSE

The traveling defense provided by statute has remained unchanged since its promulgation in 1871[5]. "Traveling" has never been defined by statute and the precise meaning of the term has been the subject of much debate. *Ayesh v. State*, 734 S.W.2d 106, 108 (Tex.App.—Austin 1987, no pet.); *see generally* Robert G. Newman, *A Farewell to Arms?—An Analysis of Texas Handgun Control Law*, 13 ST. MARY'S L.J. 601, 607 (1982). The decisions have not been harmonious. 20 TEX. JUR.3D *Criminal Law* § 1327 at 469 (1982). In fact, the decisions have been described as being in a state of "hopeless confusion." *Smith v. State*, 630 S.W.2d 948, 951 (Tex.Crim.App.1982). There is no bright line test for determining when one is "traveling" for the purpose of the statute and the standards that have evolved from the case law are not models of clarity. *Soderman v. State*, 915 S.W.2d 605, 610 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd, untimely filed).

In applying the term "traveling", Texas courts have generally considered distance, time, and mode of travel. *See* Practice Com-

---

3. The current code uses the term "defense." *See* TEX. PENAL CODE ANN. § 46.02(a) (Vernon 1994).

4. Section 46.02(b)(2) recognizes the defense of carrying a handgun on one's own premises. TEX. PENAL CODE ANN. § 46.02(b)(2) (Vernon Supp. 1997).

5. Act approved April 12, 1871, 12th Leg., R.S., ch. 34, § 1, 1871 Tex. Gen. Laws 25, 25, *reprinted* in 6 H.P.N. GAMMEL, LAWS OF TEXAS 927, 927 (1897); *see also Moosani*, 914 S.W.2d at 574.

mentary, TEXAS PENAL CODE ANN. art. 46.03 (Vernon 1989); 6 MICHAEL B. CHARLTON, TEXAS CRIMINAL LAW § 26.3 at 317–18 (West 1994). One who goes from one point in one county to another point has been held a "traveler" within the meaning of the statute. *See Ballard v. State*, 74 Tex.Crim. 110, 167 S.W. 340, 340 (1914); *Campbell v. State*, 58 Tex.Crim. 349, 125 S.W. 893, 893 (1910). This is particularly true where there is a real journey. *See Smith v. State*, 42 Tex. 464, 465–66 (1875). Where the distance is short and there is no real journey, one is not a traveler although he may be going from one county to another. *See Blackwell v. State*, 34 Tex.Crim. 476, 31 S.W. 380, 380 (1895); *see also Stanfield v. State*, 34 S.W. 116, 116 (Tex.Crim.App.1896). When applying the general rule of going from one county to another, the mode of travel and not distance alone is to be considered. *Kemp v. State*, 116 Tex.Crim. 90, 31 S.W.2d 652, 653 (1930). All the circumstances of each case must be considered. *See George v. State*, 90 Tex. Crim. 179, 234 S.W. 87, 88 (1921). Early on, it was said that it was impossible to establish any unbending rule or determine distance that will characterize an act as a journey or the actor as a traveler. *Bain v. State*, 38 Tex.Crim. 635, 44 S.W. 518, 518 (1898) (holding that one who traveled thirty-five miles was a traveler). Where the actor was preparing to spend the night, the distance of twenty-five miles has been held sufficient to constitute one a traveler. *See Price v. State*, 34 Tex.Crim. 102, 29 S.W. 473, 473 (1895). The trip must be typically overnight. *Vogt v. State*, 159 Tex.Crim. 211, 258 S.W.2d 795, 796 (1953); *Ayesh*, 734 S.W.2d at 106. However, *Vogt* did not restrict the defense solely to those situations. *Matocha v. State*, 890 S.W.2d 144, 145 (Tex.App.—Texarkana 1994, pet. ref'd). The question of whether one is a traveler is a fact-driven determination that is not dependent upon any one particular situation. *Id.* at 145.

## CESSATION OF A JOURNEY

◾ The cessation of a journey on legitimate business incident to the journey or other valid reason does not forfeit a defendant's right as a traveler to carry a pistol. *Kemp v. State*, 116 Tex.Crim. 90, 31 S.W.2d 652, 653 (1930) (holding that stopping to dine while leaving a gun in car did not cause loss of traveler status); *Irvin v. State*, 51 Tex. Crim. 52, 100 S.W. 779, 780 (1907) (holding deviation valid if for medical reasons); *Price v. State*, 34 Tex.Crim. 102, 29 S.W. 473, 473 (1895). Mere delay does not deprive one of the defense of traveling. *Irvin*, 100 S.W. at 780; *Hunt v. State*, 52 Tex.Crim. 477, 107 S.W. 842, 844 (1908). When one turns aside from his journey to partake of any pleasure or business not connected with the journey he may lose his traveler status. *See Tadlock v. State*, 124 Tex.Crim. 637, 64 S.W.2d 963, 964 (1933); *Pecht v. State*, 82 Tex.Crim. 136, 199 S.W. 290, 291 (1917); *Colson v. State*, 52 Tex.Crim. 138, 105 S.W. 507, 507 (1907). The traveling status also ceases when a traveler has returned home from his journey. *Smith v. State*, 630 S.W.2d at 951. A traveler who returned to his own home from out of state, showered, changed clothes, and drove out into the country with his wife was no longer a traveler when he was arrested for unlawfully carrying. *Kiles v. State*, 398 S.W.2d 568, 569 (Tex.Crim.App.1966). However, on returning from a journey, a person may carry his pistol home from the train to his home or place of business. *Linticum v. State*, 17 S.W. 930, 930 (Tex.Ct.App.1891). In fact, a pistol may lawfully be taken to one's home or place of business for the purpose of leaving it there. *See Fields v. State*, 45 Tex.Crim. 563, 78 S.W. 932, 933 (1904).

## OTHER EXCEPTIONS

◾ In addition to the statutory defenses, including traveling, there are other exceptions or exemptions[6] crafted by case law which arise when the defendant has a legitimate purpose to carry the weapon. *See generally Deuschle v. State*, 109 Tex.Crim. 355, 4 S.W.2d 559, 561 (1927); *Dixon v. State*, 908 S.W.2d 616, 619 (Tex.App.—Amarillo 1995, pet. ref'd ). For example, a person has a legitimate purpose to carry a weapon to any

---

**6.** These exceptions have been referred to as "nonstatutory exceptions," 20 TEX. JUR.3d, *Criminal Law* § 1332 at 474; "judicial defenses" *Charlton* § 26.3 at 319; and even "common law defenses," *Moosani v. State*, 914 S.W.2d 569, 570 (Tex.Crim.App.1995) (Baird, J., dissenting).

of the places excepted by section 46.02(b) such as his home or place of business. *See Moosani,* 914 S.W.2d at 570 (Baird, J., dissenting); *Davis v. State,* 135 Tex.Crim. 659, 122 S.W.2d 635, 636 (1938). Case law defenses have their roots in the statutory defenses that one may carry a weapon at home, on one's business premises, or while traveling. *Inzer v. State,* 601 S.W.2d 367, 368 (Tex.Crim.App.1980). The statutory defenses have been included in the current penal code and the case law defenses have continued vitality.

These exceptions have been held to include the right to carry a handgun home from the place of purchase. *Waddell v. State,* 37 Tex. 354, 355–56 (1873); the right to carry a gun home from place of business, *Bowles v. State,* 66 Tex.Crim. 550, 147 S.W. 869, 870 (1912); the right to carry a pistol from a residence to the defendant's place of business, *Sanders v. State,* 20 S.W. 556, 556 (Tex.Crim.App.1892); the right to carry a pistol to a repair shop, *Mangum v. State,* 90 S.W. 31, 31 (Tex.Crim. App.1905); and the right to return a borrowed pistol, *Due v. State,* 123 Tex.Crim. 73, 57 S.W.2d 849, 850 (1933).

In *Rosebud v. State,* 87 Tex.Crim. 267, 220 S.W. 1093 (Tex.Crim.App.1920), the court stated:

> It is the unbroken line of authority in this state that a party has a right to carry his pistol home, to his residence, or place of business under legitimate circumstances. If appellant got the pistol at Alto from his brother, to whom he loaned it, and carried it to Nacogdoches [his home], it would not constitute a violation of the law. *It is unnecessary to discuss the question as to whether he was a traveler or not. He had a right to take his pistol home, and this would not be violative of the statute. Id.* at 1093 (emphasis added); *see also Inzer,* 601 S.W.2d at 369.

There is also authority that ordinarily one is authorized to carry a pistol from his place of business to his home when he has on his person a considerable sum of money. *Boyett v. State,* 167 Tex.Crim. 195, 319 S.W.2d 106, 107 (1958).

These exceptions are not unlimited. An accused is entitled to assert these defenses only if: (1) the purpose for carrying the weapon was legitimate and not contrived; (2) the route taken was practical; (3) the accused's journey proceeded without undue or unreasonable deviation; and, (4) the weapon was not carried habitually. *See Johnson v. State,* 571 S.W.2d 170, 172 (Tex.Crim.App. 1978); *Cortemeglia v. State,* 505 S.W.2d 296, 297–98 (Tex.Crim.App.1974); *Cassi v. State,* 86 Tex.Crim. 369, 216 S.W. 1099, (1919); *see also Moosani,* 914 S.W.2d at 571.

## CHARGING ON A DEFENSIVE THEORY

If evidence is introduced from any source which raises an issue on a defensive theory, the theory must, upon proper request, be included in the court's charge. *Ojeda v. State,* 712 S.W.2d 742, 744 (Tex.Crim.App. 1986). The accused is entitled to an instruction on the defensive theory even if the issue was raised only by the defendant's testimony alone. *Miller v. State,* 815 S.W.2d 582, 585 (Tex.Crim.App.1991); *Hayes v. State,* 728 S.W.2d 804, 807 (Tex.Crim.App.1987). A defendant is entitled to such charge whether the evidence raising the issue is strong, weak, unimpeached, contradicted, or unbelievable. *Muniz v. State,* 851 S.W.2d 238, 254 (Tex.Crim.App.1993); *Lugo v. State,* 667 S.W.2d 144, 146 (Tex.Crim.App.1984). It is not the court's function to determine the credibility or weight to be given the evidence raising the defensive issue in a jury trial. *Gibson v. State,* 726 S.W.2d 129, 132–33 (Tex. Crim.App.1987). It is the jury's duty under the proper instructions to determine if the evidence is credible and supports the defensive theory. *Moore v. State,* 574 S.W.2d 122, 124 (Tex.Crim.App.1978).

The defense of traveling is a question for the trier of fact be it judge or jury. *Smith,* 630 S.W.2d at 950; *Evers v. State,* 576 S.W.2d 46, 50 (Tex.Crim.App.1978). The fact finder is not required to believe the defendant's reason for carrying a pistol, *Evers,* 576 S.W.2d at 50, but if the issue is raised by the evidence in a jury trial, it should be submitted like any defensive theory. *See Williams*

*v. State,* 796 S.W.2d 793, 799 (Tex.App.—San Antonio 1990, no pet.).

## THE INSTANT CASE

■ With this background, we return to the facts of the instant case. Appellant's testimony clearly raised the defensive issue that he was a traveler. He testified that he drove approximately 55 miles from his home in San Antonio to San Marcos, going from Bexar County through Comal County to Hays County, traveling mainly on IH 35; that he spent the night in San Marcos and returned to the San Antonio area the next morning. He stated that he stopped briefly for breakfast and to purchase tacos for lunch and then drove to his job site arriving five minutes before starting time. He explained that his home was some eight to ten miles away and that a round trip of approximately 20 miles in the heavy morning traffic would have made him late to work. Appellant testified that his gun was locked in the console of his truck and that he was in the process of going directly home and completing the trip when he was stopped by the officer.

The evidence clearly was sufficient to raise the issue whether appellant was a traveler. The State reluctantly concedes this point, but contends that when appellant interrupted his sojourn by reporting at his regular place of employment, he lost his traveler's status because he stopped for business not connected with the purpose of the trip. *See Evers,* 576 S.W.2d at 50.[7] The State's argument does not explain how, if appellant was a traveler until he reached his job site, he could ever legally return the handgun to his home where he had the right to have the gun. Appellant takes the position that under the circumstances there was no deviation that would deprive him of his status of a traveler at the time he was stopped on his way home. It also appears to be appellant's contention that independent of his traveler's status, he had the right to take the handgun home which was for a legitimate purpose, the route was practical and that there was no showing

that he carried the handgun habitually. *See Inzer,* 601 S.W.2d at 369. Moreover, there was evidence that he was carrying $530 to his home. *See Boyett,* 319 S.W.2d at 107.

The State relies upon *Payne v. State,* 494 S.W.2d 898, 900 (Tex.Crim.App.1973), which held that the defendant was not entitled to a jury instruction on the defense of traveling, apparently as a matter of law, because he had deviated from his journey and had loitered in a lounge for two hours. *Payne* gave no heed to the proposition of law that a defendant is entitled to a defensive issue being submitted to the jury regardless of whether the evidence supporting the issue is weak, strong, contradicted, unimpeached, or unbelievable. In *Davis,* 122 S.W.2d at 635–36, the defendant had deviated from his journey only to take a passenger to her home in the city. There, it was held error to refuse to give the defensive charge. *Payne* sought to distinguish *Davis* on the basis that the defendant (Davis) had not loitered in a bar for two hours. If that be a proper distinction, it would apply to the instant case. Whatever the continued viability of *Payne,* we do not deem it controlling here.

In the instant case, the trial court removed the defensive theory from the proposed charge at the insistence of the State and over appellant's objection, and then refused appellant's special requested charge. In this the trial court erred.

■ The degree of harm required to cause an individual case to be reversed for charge error depends whether the error was preserved in the trial court. *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (op. on reh'g).[8] If error was properly preserved at trial, *any* harm, regardless of the degree, is sufficient to require a reversal of the conviction. *See Arline v. State,* 721 S.W.2d 348, 351 (Tex.Crim.App.1986) (modifying *Almanza*). "Cases involving preserved charging error will be affirmed only if no harm has occurred." *Arline,* 721 S.W.2d at 351. Ex-

---

7. In *Evers,* the court held that under the travel "exemption" the purpose of the travel is not relevant. 576 S.W.2d at 50.

8. Prior to *Almanza,* it was held that failure to give a proper charge on the defensive issue in an unlawfully carrying case presented reversible error when raised by the evidence and properly requested. *Johnson,* 571 S.W.2d at 173 n. 4.

amining the relevant portions of the record as required by *Almanza,* 686 S.W.2d at 171, we cannot say that appellant did not suffer any harm. The jury, the trier of the fact, was not given an opportunity to pass upon the defensive theory. The error was a result of the trial court's failure to give the requested charge and requires reversal. *Gibson,* 726 S.W.2d at 133. The first point of error is sustained.

■ In view of our disposition of the first point of error, we need not reach the other points of error. In the event of a retrial, the videotape taken of appellant at the intoxilyzer facility should not be admitted over timely and proper objection. It was not relevant to the instant charge and not a part of the "same transaction contextual evidence." *See Mayes v. State,* 816 S.W.2d 79, 86 (Tex.Crim. App.1991); *see also Burks v. State,* 876 S.W.2d 877, 900 (Tex.Crim.App.1994), *cert. denied,* 513 U.S. 1114, 115 S.Ct. 909, 130 L.Ed.2d 791 (1995); *Mann v. State,* 718 S.W.2d 741, 744 (Tex.Crim.App.1986). The handgun in question had been seized and placed in custody. The videotape did not show the handgun or relate to the instant charge. It was taken for use in any possible driving while intoxicated prosecution which charge had been severed from the instant case.

The judgment is reversed and the cause is remanded to the trial court.