Frederick BERGMAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–01–00753–CR.

Court of Appeals of Texas,
San Antonio.

Sept. 25, 2002.

Joe Stenberg, San Antonio, for appellant.

Susan D. Reed, Criminal District Attorney, Michael P. Miklas, III, Assistant Criminal District Attorney, San Antonio, for appellee.

Sitting: CATHERINE STONE, Justice, PAUL W. GREEN, Justice, SARAH B. DUNCAN, Justice.

Opinion by CATHERINE STONE, Justice.

Frederick Bergman ("Bergman") was convicted by a jury of unlawfully carrying a weapon. In seven points of error, Bergman complains that the evidence is insufficient to support the conviction and the trial court erred in denying Bergman's requests for additional jury instructions. We affirm the trial court's judgment.

### LEGAL AND FACTUAL SUFFICIENCY

Bergman was the supervisor/manager of Barton's Boozery, a bar. On March 26, 2001, the night bartender called the police at 12:09 a.m. after she was attacked and her attackers threatened to return. The night bartender also called Bergman at approximately 12:30 to tell him about the incident and to tell him that the police were called. Standard operating procedures required the bar employees to call Bergman each time the police were called. Two police report surveys were introduced into evidence to demonstrate that the police were summoned to the bar frequently. Bergman also testified that he was frequently threatened at the bar.

Bergman stated that the police called him and suggested that he come to the bar because they were leaving and the security guard was leaving at 2:00 a.m., which would leave the night bartender by herself. Bergman drove into work and assisted the night bartender with cleaning and restocking. Bergman testified that he took his handgun and additional ammunition with him to the bar.

Judy Murphy, the day bartender, testified that Bergman was at the bar when she arrived for her shift at 6:45 a.m. It was unusual for Bergman to be at the bar at

that time. Bergman explained what had happened and that he was waiting for Chris Stanton, who routinely arrived around 8:00 a.m. to collect the quarters from the pool tables and jukeboxes at the bar. Bergman called Stanton and explained that he was exhausted. Bergman asked Stanton if he could collect the quarters another time, but Stanton implored Bergman to wait for him so that Stanton could stay on schedule. When Stanton arrived at the bar, he saw how tired Bergman was and offered to give him a ride home. Bergman declined the offer. Stanton finished collecting the quarters and left. Bergman left after Stanton. Murphy testified that Bergman left around 8:30. A map was introduced to show the route Bergman took each day to return home from work.

At 9:45 a.m., Officer Patrick Robertson was dispatched to investigate a report of a vehicle that was stalled in the middle lane of the access road to Loop 410 approaching the Bandera Road intersection. The vehicle was located on the route Bergman normally took between work and home. Officer Robertson observed that the driver, Bergman, was asleep with the car in gear, but Bergman's feet were on the brake. Officer Robertson reached into the car, put it in park, and took out the keys. Bergman woke up but was dazed. When Bergman reached to his back waist, Officer Robertson yelled that he was a police officer to focus Bergman and get his attention. Officer Robertson asked Bergman if he had any weapons, and Bergman told Officer Robertson that he had a handgun in his waistband. Officer Robertson retrieved the handgun. In addition, Officer Robertson retrieved four knives, an assault rifle magazine, and four additional magazine clips for the handgun. Bergman explained to Officer Robertson that he was not required to have a permit for the handgun because he was traveling to and from work. The owner of the bar testified that Bergman had his permission to have a handgun at the bar.

In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In our factual sufficiency review, we must consider all of the evidence to determine whether the judgment is "so contrary to the overwhelming weight of the evidence to be clearly wrong and unjust." *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). The trier of fact is required to evaluate the credibility and demeanor of the witnesses and determine the weight to be given contradictory testimony. *Cain v. State*, 958 S.W.2d 404, 408–09 (Tex.Crim. App.1997). We are not permitted to reweigh the evidence, rather we defer to the trier of fact's findings, particularly those based on credibility determinations. *Id.* at 407–09.

A person commits the offense of unlawfully carrying a weapon if he intentionally, knowingly, or recklessly carries on or about his person a handgun. TEX. PEN.CODE ANN. § 46.02 (Vernon Supp. 2002). Both statutory and common law defenses to the offense of unlawfully carrying a weapon exist. *See Birch v. State*, 948 S.W.2d 880, 882–84 (Tex.App.-San Antonio 1997, no pet.); *Moosani v. State*, 866 S.W.2d 736, 738 (Tex.App.-Houston [14th Dist.] 1993), *aff'd*, 914 S.W.2d 569 (Tex. Crim.App.1995) (adopting court of appeals' reasoning); TEX. PEN.CODE ANN. § 46.15 (Vernon Supp.2002). One defense permits a person to carry a handgun from his place of business to his home or from his home to his place of business provided that: (1)

the weapon is not habitually carried between those places; (2) the purpose for carrying the weapon is legitimate; (3) the route taken is a practical one; and (4) the journey proceeds without undue delay or unnecessary or unreasonable deviation. *Moosani*, 866 S.W.2d at 738; *see also Birch*, 948 S.W.2d at 884 (listing conditions for defense). Once a defendant raises a defensive issue, the State has the burden to disprove the defense beyond a reasonable doubt. *Moosani*, 866 S.W.2d at 738; Tex. Pen.Code Ann. § 2.03(d) (Vernon 1994).

■ Bergman contends that the evidence is insufficient because the State failed to disprove the defense that allowed him to carry his handgun from his place of business to his home. The State responds that the jury could have found that Bergman was not entitled to the defense because he habitually carried the weapon or because he deviated from his route when he fell asleep in the middle lane of traffic.

Bergman testified that he did not routinely or habitually carry the handgun to work. Bergman testified that the employees called him every time the police were called, but Bergman did not always go to the bar in response. Bergman further testified that he did not carry his handgun after each incident in which he was threatened. In response to the prosecutor's question regarding how many times Bergman carried his gun to the bar, Bergman responded that he did not keep a count. Bergman did not know how many times he had carried the gun in the last year but stated it was not that frequent. In response to the prosecutor's question regarding whether Bergman carried his handgun one time a week or one time a month, Bergman responded that he did not keep track.

Based on Bergman's responses to the prosecutor's questions, the jury could have disbelieved Bergman's testimony that he did not habitually carry the handgun. The jury could have inferred from Bergman's refusal to estimate the frequency with which he carried the handgun that Bergman carried the handgun habitually. In addition, Bergman was only entitled to the defense if he could show that the journey proceeded without undue delay. Morgan testified that Bergman left the bar at 8:30. Officer Robertson testified that he received the dispatch at 9:45 a.m., and it took him fifteen to twenty minutes to arrive at the location. The jury could have believed from this evidence that Bergman's journey did not proceed without undue delay in view of the amount of time that elapsed from when Bergman left the bar until Officer Robertson arrived at Bergman's car.

The evidence is legally and factually sufficient to support Bergman's conviction.

## JURY CHARGE

■ Bergman was entitled to an instruction on any defensive theory raised by the evidence even if the issue was raised only by Bergman's testimony. *Birch*, 948 S.W.2d at 884. A defensive instruction should be given whether the evidence raising the issue is strong, weak, unimpeached, contradicted, or unbelievable. *Id.* Just as the trial court must specifically charge the jury on all the essential elements of the offense set forth in the charging instrument, *Sparkman v. State*, 55 S.W.3d 625, 631 (Tex.App.-San Antonio 2000, no pet.), an instruction regarding a defense must include all essential elements of the defense.

The jury charge contained the following instruction:

> You are instructed that a person may lawfully carry a pistol from his place of business to his home or from his home to his place of business, provided that

the weapon is not habitually carried between those places and the purpose is a legitimate one. The route taken for the transportation must be a practical one, though not necessarily the shortest or most practical and the journey must proceed without undue delay or unnecessary deviation.

Now, if you find from the evidence that on the occasion in question the defendant, FREDERICK BERGMAN, was carrying the pistol introduced into evidence from his place of business to his home, and that he was going by a practical route at the time and was proceeding without undue delay or unnecessary or unreasonable deviation, and that said weapon was not habitually carried by the defendant between his home and place of business, or if you have a reasonable doubt as to the foregoing, then you will find the defendant not guilty.

Bergman contends that the trial court erred in denying the additional instructions that he requested. We will examine these instructions separately.

■ Bergman's first requested instruction is substantially similar to the instruction that was included in the jury charge except Bergman's requested instruction omits the requirement that the weapon not be habitually carried. This requirement is an element of the defense; therefore, the trial court did not err in denying Bergman's first requested instruction. *See Birch,* 948 S.W.2d at 884; *Moosani,* 866 S.W.2d at 738.

Bergman's third and fourth requested instructions are also substantially similar to the instruction that was given except those instructions define the place of business as one that has an alcoholic permit or license and the third requested instruction omits the requirement that the weapon not be carried habitually. Bergman bases these requested instructions on the de-

fense available to a person who "holds an alcoholic beverage permit or license or is an employee of a holder of an alcoholic beverage permit or license if the person is supervising the operation of the permitted or licensed premises." TEX. PEN.CODE ANN. § 46.15(b)(8) (Vernon Supp.2002). However, as the statute states, that defense is only available "if the person is supervising the operation of the permitted or licensed premises." *Id.* Bergman was not supervising the operation of the bar while he was driving home. Therefore, the trial court did not err in denying Bergman's third and fourth requested instructions.

■ Bergman's fifth requested instruction relates to the defense of traveling. " 'Traveling' has never been defined by statute, and the precise meaning of the term has been the subject of much debate." *Birch,* 948 S.W.2d at 882. "There is no bright line test for determining when one is 'traveling' for the purpose of the statute, and the standards that have evolved from the case law are not models of clarity." *Id.* "In applying the term 'traveling,' Texas courts have generally considered distance, time, and mode of travel." *Id.* "Where the distance is short and there is no real journey, one is not a traveler although he may be going from one county to another." *Id.* "The trip must typically be overnight;" however, the defense is not restricted solely to those situations. *Id.* "The question of whether one is a traveler is a fact-driven determination that is not dependent upon any one particular situation."

In this case, Bergman's travel from his place of business to his home located in the same city cannot be considered a "real journey." If such were the case, the defense allowing a person to carry a weapon to and from work would be unnecessary, and the additional requirements imposed on that defense, including the requirement

that the weapon not be habitually carried, would be meaningless. Therefore, the trial court did not err in finding that Bergman was not entitled to a traveling defense as a matter of law.

■ Bergman's seventh requested instruction was an instruction on mistake of fact. To be entitled to a mistake of fact defense, the evidence must raise an issue as to whether the defendant mistakenly formed a reasonable belief about a matter of fact that would negate the kind of culpability required for the commission of the offense. TEX. PEN.CODE ANN. § 8.02 (Vernon 1994). The statutory term "kind of culpability" means "culpable mental state." *Posey v. State*, 966 S.W.2d 57, 70 (Tex. Crim.App.1998). "The defense arises, then, when there is evidence that a defendant's mistaken, reasonable belief about a matter of fact negated the element of the culpable mental state required for the offense." *Id.*

Bergman's instruction would permit the jury to acquit him if he had formed a mistaken belief about whether the purpose for carrying the handgun was legitimate and whether the route taken was a practical one. The offense of unlawfully carrying a weapon requires culpable possession. *Ex parte Romero*, 943 S.W.2d 79, 79–80 (Tex.App.-San Antonio 1997, no pet.). Therefore, the culpable mental state is whether Bergman intentionally, knowingly, or recklessly possessed the handgun. A mistaken belief about the purpose for carrying the handgun or the route taken does not negate this culpable mental state. Therefore, the trial court did not err in denying Bergman's requested instruction.

### CONCLUSION

The trial court's judgment is affirmed.