NO. 12-00-00356-CR



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


TOMMY EARL HARRELL, JR.,
§
 APPEAL FROM THE 124TH

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 GREGG COUNTY, TEXAS

 

 A jury convicted Tommy Earl Harrell ("Appellant") of capital murder. In accordance with
the jury's answers to the charge submitted at the punishment phase, the trial court sentenced
Appellant to life imprisonment. Appellant raises three issues on appeal contending that he was
denied effective assistance of counsel and that the trial court erred in not charging the jury on
Appellant's right to carry a weapon while traveling. We affirm.


Background


 On the evening of the offense, Appellant played cards at the house of one of the victims,
Robert Bush ("Bush"), and lost several hundred dollars. Later that evening, Appellant called Bush
and asked that Bush pick him up, which he did. Don Hollins ("Hollins") was with Bush when he
picked up Appellant. Bush drove the car, Hollins sat in the passenger seat, and Appellant sat in the
back seat. Appellant asked Bush to return the money that he had lost in the card game, but Bush
refused. After this conversation, Appellant shot both Bush and Hollins in the back of the head. 
Appellant then jumped from the back seat of the car onto the pavement. The car was moving slowly,
so he ran and caught up with it. He stopped the car, moved Bush from the driver's seat to the back
seat, and took $900.00 from Bush's pocket. Appellant then drove to a grass lot where he left the car
and the bodies. After leaving the car, Appellant ran from the scene and went to a friend's apartment
which was nearby.

 Appellant voluntarily took a polygraph test which indicated he was not truthful about his
involvement in the shootings. In addition, he gave several voluntary statements which were
contradictory. The trial court refused to suppress the statements. Prior to trial, Appellant requested
that the trial court remove his trial counsel ("counsel") because counsel had previously represented
Bush. The trial court found no conflict of interest and declined to remove counsel. The jury rejected
Appellant's self-defense explanation and found him guilty of capital murder. In accordance with the
jury's answers to the charge submitted at the punishment phase, the trial court sentenced Appellant
to life imprisonment. This appeal followed.

 In his first two issues, Appellant claims he was denied effective assistance of counsel under
the Sixth Amendment to the United States Constitution and due process of law under the Fifth
Amendment. In his third issue, Appellant contends the trial court erred in not charging the jury on
his right to carry a weapon while traveling. 


Ineffective Assistance of Counsel

 In his first issue, Appellant contends that he was denied effective assistance of counsel
because his trial counsel labored under an actual conflict of interest that adversely affected his
performance. In his second issue, Appellant asserts that he was denied his Fifth Amendment right
to due process and his Sixth Amendment right to effective assistance of counsel when the trial judge
failed to conduct a full hearing into counsel's conflict of interest. Because of the similarity of these
two issues, we address them together.

 The Sixth Amendment to the United States Constitution guarantees that in all criminal
prosecutions the accused shall have the right to reasonably effective assistance of counsel. 
Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984);
Monreal v. State, 947 S.W.2d 559, 564 (Tex. Crim. App. 1997); Nethery v. State, 29 S.W.3d 178,
188 (Tex. App.-Dallas 2000, pet. ref'd). The Sixth Amendment also guarantees a defendant the right
to "conflict-free" representation. Ex parte McCormick, 645 S.W.2d 801, 802 (Tex. Crim. App.
1983).


Standards for Ineffective Assistance of Counsel

 The vast majority of claims alleging ineffective assistance of counsel fall within the familiar
Strickland standard. See Strickland, 466 U.S. at 668, 104 S. Ct. at 2052. To prove ineffective
assistance of counsel under this standard, an appellant must show that (1) counsel's representation
or advice fell below objective standards of reasonableness and (2) the result of the proceeding would
have been different but for trial counsel's deficient performance. Id., 466 U.S. at 688-92, 104 S. Ct.
at 2052. Moreover, the appellant bears the burden of proving his claims by a preponderance of the
evidence. Jackson v. State, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998).

 Although Strickland governs claims of ineffective assistance of counsel based on attorney
error, certain claims of ineffective assistance of counsel involving conflicts of interest are controlled
by Cuyler v. Sullivan, a case the United States Supreme Court decided four years before Strickland.
See Cuyler v. Sullivan, 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980). Under Cuyler, a
defendant demonstrates a violation of his right to reasonably effective assistance of counsel based
on a conflict of interest if he can show that (1) his counsel was burdened by an actual conflict of
interest and (2) the conflict had an adverse effect on specific instances of counsel's performance. Id.,
446 U.S. at 348-50, 100 S. Ct. at 1718-19. An actual conflict of interest exists if counsel is required
to make a choice between advancing a client's interest in a fair trial or advancing other interests to
the detriment of the client's interest. See Monreal, 947 S.W.2d at 564; Perillo v. Johnson, 205 F.3d
775, 781 (5th Cir. 2000). Until a defendant shows his counsel actively represented conflicting
interests, he has not established the constitutional predicate for his claim of ineffective assistance. 
Cuyler, 446 U.S. at 349-50, 100 S. Ct. at 1719. But if an appellant shows that a conflict of interest
actually affected the adequacy of his counsel's representation, prejudice is presumed. Id. 

 Appellant assumes in his arguments that the Cuyler standard governs our disposition of his
first two issues. Although the State does not dispute Appellant's assumption that Cuyler applies,
it contends that Appellant has failed to satisfy either prong of Cuyler. Because both Appellant and
the State have based their arguments on the assumption that Cuyler is the proper standard for
resolving Appellant's ineffectiveness of counsel issues where a conflict of interest is alleged, we
assume, without deciding, that Cuyler applies. 



Application of the Cuyler Standard

 The record in the instant case reveals that Appellant's court-appointed trial counsel
represented Bush, one of Appellant's two victims, on charges unrelated to Appellant's case. After
Bush's death, counsel was appointed to represent Appellant, who was accused of murdering Bush
and charged with capital murder. Prior to trial, Appellant informed the trial court that counsel had
previously represented "one of the guys that was killed in this situation" and that Appellant "thought
that was a conflict of interest." Appellant also told the court that as a result, he "couldn't find
confidence" in counsel. The trial court declined to remove counsel, stating that "I don't know of any
conflict with the fact that you may have represented someone in the past. I don't see where that
creates a conflict. Unless there's some showing that there is, I'm denying that request." Counsel
then confirmed that he was representing one of Appellant's victims on a pending felony and a
probation violation at the time the victim was killed. However, counsel assured the court that he
could represent Appellant. It is undisputed that the trial court made no further inquiry into the matter.

 The State admits that counsel was representing Bush at the time of his death. Appellant
contends that when counsel admitted that he had previously represented one of Appellant's victims,
he also, by implication, admitted that he had a conflict of interest. Therefore, Appellant argues, the
trial court should have conducted a full hearing to determine whether counsel's prior representation
of Bush would impair his representation of Appellant. Because the trial court did not do so,
Appellant contends his conviction must be reversed and this cause remanded for a new trial.

 In his address to the trial court, Appellant stated that counsel had previously represented one
of the victims, but gave no particulars or further explanation of the alleged conflict. Moreover,
counsel informed the trial court that he could represent Appellant. Therefore, the trial court found
that Appellant did not show an actual conflict. A mere assertion that an actual conflict exists,
without a more particularized indication of the nature of the conflict, does not relieve a defendant
of the necessity of demonstrating that an actual conflict exists. See Calloway v. State, 699 S.W.2d
824, 829-31 (Tex. Crim. App. 1985). Although Appellant established a potential conflict of interest,
his statements to the trial court do not establish an actual conflict. Therefore, the trial court was not
obligated to conduct any further inquiry to ascertain whether Appellant's counsel should have been
removed. Thus, we hold that Appellant has not shown the existence of an actual conflict of interest
as required by the first prong of Cuyler. Consequently, we also hold that the trial court did not err
in denying Appellant's request for counsel's removal without a full hearing. However, even if the
trial court had a duty to conduct a hearing on the alleged conflict, Appellant would not be entitled
to the relief he seeks.

 In Mickens v. Taylor, __ U.S. __, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2002), the United
States Supreme Court recently addressed an issue similar to the one Appellant presents in the case
at bar. In that case, the petitioner, Mickens, sought a writ of habeas corpus alleging that he was
denied effective assistance of counsel at his murder trial. Specifically, Mickens contended that a
Sixth Amendment violation had occurred because one of his court-appointed attorneys, Saunders,
had a conflict of interest arising from his representation of Mickens's juvenile victim, Hall, on
assault and concealed weapons charges. Id., __ U.S. at __, 122 S. Ct. at 1239-40. Saunders had
been appointed to represent Hall about ten days before Hall was murdered and had met with Hall
once for about twenty minutes. Id. Shortly after Hall's body was discovered, the juvenile court
dismissed the charges against Hall, noting on the docket sheet that he was deceased. Id. The
one-page docket sheet also listed Saunders as Hall's counsel. About a week later, the same trial court
appointed Saunders to represent Mickens, the man accused of murdering Hall. Id.

 The question presented in Mickens's habeas petition was what a defendant must show in
order to demonstrate a Sixth Amendment violation when the trial court failed to inquire into a
potential conflict of interest about which it knew or reasonably should have known. Id., __U.S. at
__, 122 S. Ct. at 1239. The Fourth Circuit Court of Appeals assumed that the trial court reasonably
should have known that Saunders labored under a potential conflict of interest. Mickens v. Taylor,
240 F.3d 348, 357 (4th Cir. 2001) (op. on reh'g), aff'd, __ U.S. __, 122 S. Ct. 1237, 152 L. Ed. 2d
291 (2002). However, it rejected the argument that the trial court's failure to inquire into the
potential conflict either mandated automatic reversal of Mickens's conviction or relieved him of the
burden to show that a conflict of interest adversely affected his counsel's performance. Id. In
affirming the denial of habeas relief, the Supreme Court held that the trial court's failure to inquire
into the alleged conflict of interest did not reduce Mickens's burden of proof. Id., __U.S. at __, 122
S. Ct. at 1243-45. (1) Therefore, it was necessary for Mickens to establish the existence of a conflict
of interest that adversely affected his counsel's performance. Id. Because Mickens failed to show
adverse effect, he failed to meet his burden under Cuyler, even if an actual conflict existed. See id. 

 In the present case, Appellant argues that "trial counsel conceivably could have had sympathy
for [Bush and his family] and held back on [his] duty to paint the victims with aggressive character
in pursuit of self-defense." He also states that "a jury might have been persuaded that while it is not
politically or legally correct to weight the character of dead men, it is done as a routine matter of
criminal defense. A legitimate criminal defense strategy is that the victim(s) needed killing." 
However, Appellant has failed to cite any specific instances from the trial record that indicate
counsel was actually hindered in his performance by sympathy for Bush's family or by any other
matter relating to his prior representation of Bush. Further, it is not possible to identify from the face
of the record that any such instances exist. To the contrary, as the State points out, the record reflects
that counsel "painted the victims as gun-toting drug dealers who had many contacts with criminal
activity." During the course of the trial, counsel presented evidence from which the jury could have
concluded that Appellant's victims sold drugs, carried guns, and were violent and threatening. In
short, Appellant has failed to show that counsel's performance was adversely affected by his prior
representation of Bush. Therefore, Appellant failed to satisfy the second prong of Cuyler. 
Appellant's first and second issues are overruled.


Jury Charge

 In his third issue, Appellant contends the trial court erred in refusing to charge the jury that
Appellant had a right to carry a weapon as a traveler. We disagree. The "traveling exception" or
traveling defense to an unlawful carrying of a hand gun charge is a question for the trier of fact. 
Birch v. State, 948 S.W.2d 880, 884 (Tex. App.-San Antonio 1997, no pet.). If the issue is raised
by the evidence, no matter how strong or weak, the trial court should give the defensive charge if
requested. Soderman v. Sate, 915 S.W.2d 605, 609 (Tex. App.-Houston [14th Dist.] 1996, pet.
ref'd).

 After a careful review of case law and this record, we hold there is no evidence that Appellant
was traveling. Therefore, the trial court did not err in refusing the charge. Appellant's third issue
is overruled.


CONCLUSION


 As to Appellant's first and second issues, Appellant failed to show that his trial counsel's
prior representation of one of Appellant's victims created a conflict of interest. Therefore, the trial
court did not err in denying Appellant's request to remove trial counsel without conducting a full
hearing on the alleged conflict of interest. However, even assuming that the trial court's failure to
conduct a hearing was error, Appellant has not shown that his trial counsel's performance was
impaired by the alleged conflict of interest. Consequently, Appellant has failed to show that he
received ineffective assistance of counsel or that his right to due process was violated. As to
Appellant's third issue, the record contains no evidence that Appellant was traveling at the time of
the offense. Therefore, the trial court did not err in refusing to charge the jury on Appellant's right
to carry a weapon while traveling.

 The judgment of the trial court is affirmed.



 LOUIS B. GOHMERT, JR. 

 Chief Justice



Opinion delivered November 26, in the Year of our Lord, 2002.

Panel consisted of Gohmert, Jr., C.J., Worthen, J., and Griffith, J.




(DO NOT PUBLISH)
1. Mickens was presented and argued on the assumption that Cuyler was applicable, thus requiring a
showing of deficient performance, but not requiring, as Strickland does in other ineffectiveness-of-counsel cases, a
showing of probable effect upon the outcome of the trial. Id., __U.S. at __, 122 S. Ct. at 1245-46. In dicta, the Court
noted that this assumption was not unreasonable in light of the holdings of various courts of appeals, which have
applied Cuyler "unblinkingly" to "all kinds of alleged attorney ethical conflicts." Id. (citations omitted). However,
the Court further stated that the language of Cuyler itself does not clearly establish, or indeed even support, such an
expansive application. Id.